# LOUIS HOUCK

## *v.*

# JOSHUA L. YATES.

| 82 | 179 |
|----|-----|
| 124 | 547 |
| 82 | 179 |
| 161 | 475 |
| 82 | 179 |
| 167 | 33 |
| 82 | 179 |
| 181 | 437 |
| 82 | 179 |
| 197 | [1]204 |
| 197 | [3]205 |
| 197 | [1]206 |

1. MISSISSIPPI RIVER—*not a navigable stream according to common law definition.* Whilst the Mississippi river is a navigable stream in fact, and has been so declared and treated for years, yet it is not such a stream as is by the common law termed navigable.

2. SAME—*rights of riparian owner.* If the Mississippi river forms the boundary of land granted by the United States, the grantee becomes a riparian owner, and his grant extends to the center of the thread of the current.

3. SAME—*when considered the boundary line of land.* A meandered line run by the United States surveyor between the Mississippi river and a fractional quarter section of land, merely for the purpose of ascertaining the quantity of land in the fraction, can not be regarded as a boundary line, where no monuments are established, and where such line does not appear upon the plats in the United States land office, but in such case the river will be considered as the boundary line.

APPEAL from the Circuit Court of Alexander county.

Mr. H. K. S. O'MELVENY, and Mr. LOUIS HOUCK, for the appellant.

Mr. GEORGE FISHER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a decision of the circuit court rendered upon the following agreed statements of facts:

"Whereas, the above plaintiff has instituted a suit in ejectment against the said Louis Houck, for an undivided half of 300 acres of an island, called and known as Dickey's island, lying in the Mississippi river, on the Illinois side, and south of the west fractional half of the north-east quarter, and the north-west fractional quarter of section 5, township 17 south, range 1 west of the third principal meridian, in Alexander county, State of Illinois, which suit is now pending and undetermined in the Alexander county circuit court; and whereas,

the above parties are desirous of saving expenses and costs as much as possible;

"Now, therefore, it is agreed, on the part of the defendant, that the plaintiff, Joshua Yates, has a good and valid title in fee simple to the undivided half the west fractional half of the north-east quarter, and the north-west fractional quarter of section 5, township 17 north, range 1 west of the third principal meridian, in Alexander county, State of Illinois; that the land for which the plaintiff has sued in ejectment is situated and lying due south from the said fractions, and that on the plats of the United States survey the fractions on the south are bounded by the Mississippi river, and that the lines of said fractions, running south, extended to the center of the present channel of the Mississippi river, would embrace the land in controversy, and that neither party has any knowledge where the channel of the Mississippi river was at the time of the United States survey.

"It is agreed by the plaintiff that the island called Dickey's island first arose in the Mississippi river about 20 or 25 years ago; that it gradually increased in size, so that, now, it embraces some 600 acres, in all; that along the fractional sections described above, on the south, the United States surveyors ran a meandered line, as marked in red ink on the plat hereto attached, and marked diagram 'A,' and that the stars in the said red line show the stations, according to the United States surveyor's field notes; that between the said meandered lines of said fractional sections, and extending and running along the entire south side of said meandered line and the slough, there is a strip of land, varying in width from one-half a rod to three rods, and containing, in all, four or five acres, and that this four or five acres existed when the surveyors of the United States ran the meandered line, and was not taken in account by them in computing the amount of land in said fractions.

"It is also agreed that there is a slough between the strip of land so lying and situated south of the meandered line, which separates the island from the main land, and that this slough is about 500 feet wide, and that the slough is filled with

water about six months in the year, and that at ordinary high water the slough is navigable for steamboats, and that when the river is very low the slough is dry, but devoid of vegetation, but has clearly defined banks; and, also, that the said Houck has a house on said island, and a clearing of about eight acres, and that the island is covered with timber.

"It is further agreed between the parties hereto that diagram 'A' attached hereto gives a correct idea of the premises sued for, and the fractions as surveyed by the United States surveyor, title to the undivided half of which fractions, as surveyed by the United States surveyor, is hereby acknowledged to be in the said Joshua L. Yates in fee."

It is, first, urged that the Mississippi river is a navigable stream, and appellee's grant would extend no further than to high-water mark, and hence would not embrace the lands in controversy.

While it is true the Mississippi river is a navigable stream in fact, and has been so declared and treated for years, yet that it is not such a stream as is termed by the common law navigable, is beyond controversy.

At common law, as we understand the matter, only arms of the sea and streams where the tide ebbs and flows are regarded navigable. Streams above tide water, while they were in fact navigable, did not fall within the class of waters designated and recognized as navigable.

As early as 1842, this court held, in *Middleton* v. *Pritchard*, 3 Scam. 510, that the Mississippi was not a navigable stream, under the common law definition of navigable waters. That decision has been acquiesced in and adhered to from that time until the present, and we perceive no reason now for changing the rule announced.

If, then, the river forms the boundary of the land owned by appellee, acquired from the government, it necessarily follows that the grant extended to the center of the thread of the current of the river. He became a riparian owner, and, as such, his grant extended to the center of the current. As was said in the case cited, all accretions belonged to the riparian pro-

prietor, both by the common and the civil law. If, by the gradual washing away, his lands were diminished, that would be a loss incident to the purchase. If, on the other hand, by gradual deposits from the river, the stream receded, he would be entitled to claim the deposits so formed, and the boundaries of his purchase would thus be extended.

But it is insisted by appellant that the field notes in the land office show that a line was run between the river marked on the plat and the lands actually purchased by appellee, and this line forms the southern boundary of his lands, and not the river. Had any corner or monument been established to mark the southern boundary of appellee's purchase, by the government surveyors, such would have been conclusive. That, however, did not occur, but the river seems to have been left to mark the southern boundaries of the land. The plats in the United States land office show the river as a boundary.

But it is said the meandered line ran by the government surveyors along the fractional sections on the south, mentioned in the stipulation, should control as to the southern boundary of appellee's lands. Had corners been established, or government monuments erected, or plats made, showing it to be the intention that the meandered line should form the southern boundary of appellee's purchase, those facts would properly determine the extent of the grant; but that a meandered line, which does not appear upon the plats in the United States land office, and which was, no doubt, run for the sole purpose of ascertaining the quantity of land in the fraction, should have the same effect as a visible government monument, is a proposition which we do not feel inclined to sanction.

Indeed, it was settled in *Middleton* v. *Pritchard*, *supra*, and *Canal Trustees* v. *Haven*, 5 Gilm. 548, and subsequent cases, that a meandered line, which is run for the purpose of ascertaining the quantity of land in the fraction, can not be regarded as a boundary line.

If, in the original survey, the meandered line had been designed as the southern boundary of appellee's lands, the government plat, no doubt, would have indicated that fact,

and the strip of land between the meandered line and the river would also have been surveyed and platted. This, however, was not done. But the plat showing the river as the boundary of appellee's purchase, and the additional fact that the strip of land between the meandered line and the river was not surveyed or platted, would seem to leave no room for doubt that the river was intended for the southern boundary of appellee's lands.

We are satisfied the view taken by the circuit court of the facts was correct. The judgment will therefore be affirmed.

*Judgment affirmed.*