# THE WASHINGTON ICE COMPANY

*v.*

# JOHN G. SHORTALL.

*Filed at Ottawa November 10, 1881.*

1. RIPARIAN PROPRIETOR—*on both sides owns the bed of the stream.* A stream above the tide, although it may be navigable in fact, belongs to the riparian proprietors on each side of it to its center thread, unless the grant shows a contrary intention; and the only right the public has therein is an easement for the purpose of navigation. If the same person is the owner on both sides of a river, he owns the whole stream to the extent of the length of his lands upon it. This is the rule of the common law which has been adopted in this State.

2. SAME—*rights of riparian proprietor to use of the water.* A riparian owner has rights with respect to water in a running stream, which authorize the actual taking of a reasonable quantity of the water for his own use for domestic, manufacturing and agricultural purposes. The limitation

in extent of the use of the water is, that it shall not interfere with the public right of navigation, nor in a substantial degree diminish or impair the right of use of the water by a lower or upper proprietor, as it passes along his land.

3.  SAME—*rights of riparian owner. to ice on stream over his land.* The just and reasonable use of the water which belongs to the riparian proprietor, in case of its being congealed into ice, would give him the unlimited use and appropriation of the ice as his exclusive property, of which he can not be deprived by a mere wrongdoer.   The ice may be regarded as attached to the soil, and, like any other accession, may be considered as a part of the realty, and any stranger who enters upon the same and appropriates the ice to his own use, will be liable to the owner in trespass *quare clausum fregit.*

4.  MEASURE OF DAMAGES—*taking and removing ice from stream over the land of another.*  Where a person takes the ice in a stream. over the land of another, to which the owner of the land has the exclusive right, the measure of damages in trespass for such wrongful taking is the value of the ice as soon as it is made a chattel,—that is, when scraped, plowed, sawed, cut and severed, ready for removal.   The rule is analogous to cases where coal is wrongfully taken from the soil of another.

APPEAL from the Appellate Court for the First District:— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. FRANCIS H. KALES, for the appellant:

1.   To take ice from a fresh water river, navigable *de facto,* without the consent of the riparian owner, is not, where there is a right of access, an act of trespass.   3 Kent's Com. *427, 439; *Lyon* v. *Fishmongers' Co.* L. R. 1 App. Ca. H. L. 683; *Marshall* v. *Peters,* 12 How. Pr. 218; *Myer* v. *Whitaker,* 55 id. 376; *State* v. *Pottmeyer,* 30 Ind. 287; *State* v. *Pott-meyer,* 33 id. 402; De Jur. Mar. part 1, chap. 3; *Barney* v. *Keokuk,* 94 U. S. 324.

2.   Water in a running stream is not the property of any man.   3 Kent's Com. 427, and cases cited above.

3.   That part of the common law which distinguishes salt from fresh water rivers, where both are navigable, has always been quite inapplicable to our condition, and in no sense can it be said to have been adopted as part of our law.   *The Daniel Ball,* 10 Wall. 557; *The Montello,* 11 Wall. 411; *Barney* v. *Keokuk,* 94 U. S. 324; *Chicago* v. *McGinn,* 51 Ill. 266.

4. The mis-survey and plat returned to the government office, showing that a stream is apparently not navigable, when in point of fact it is navigable, will not be allowed as authority for a conveyance to a private party of a river which is actually navigable.

5. If the river be navigable, nothing passes below the low water, and that rule ʼis applied by the Supreme Court of the United States to fresh water rivers navigable *de facto*. *Railroad Co.* v. *Schurmier*, 7 Wall. 272; *Yates* v. *Milwaukee*, 10 id. 497; *Barney* v. *Keokuk*, 94 U. S. 324.

6. Meander lines are not boundary lines. *Railroad Co.* v. *Schurmier, supra; Middleton* v. *Pritchard*, 3 Scam. 522.

7. The court erred in instructing the jury as to the measure of damages. It should have given defendant's instruction, that in no case was the plaintiff entitled to recover more than nominal damages.

Mr. JOSEPH WRIGHT, for the appellee:

By the common law only arms of the sea, and streams where the tide ebbs and flows, are regarded navigable. The stream above the tide, although it may be navigable in fact, belongs to the riparian proprietors on each side of it, *ad filum aquæ*, and the only right the public has therein is a right of easement for the purpose of navigation. *City of Chicago* v. *McGinn*, 51 Ill. 266; *Ensminger* v. *The People ex rel. City of Cairo*, 47 id. 384.

By the common law, which prevails in this State, it is well settled that grants of land bounded on rivers or upon their margins, above tide water, carry to the grantee the exclusive right and title to the centre of the stream, unless the terms of the grant clearly denote the intention to stop at the edge of the river. *Braxon et al.* v. *Bressler*, 64 Ill. 488; *Canal Trustees* v. *Havens*, 11 id. 554; *The City of Chicago* v. *Laflin et al.* 49 id. 172; *The Chicago and Pacific R. R. Co.* v. *Stein*,

75 id. 41; *Middleton* v. *Pritchard,* 3 Scam. 510; *Houck* v. *Yates,* 82 Ill. 179.

And when the riparian proprietor has the title to land on both sides of the stream, he is the owner of the whole of the bed thereof, subject to the public right of navigation. Angell on Water Courses, (7th ed.) p. 14, sec. 10; *Olson* v. *Merrill,* 42 Wis. 203.

The same rule adopted by our courts prevails in other States. *Brown* v. *Chadbourne,* 31 Maine, 9; *Lorman* v. *Benson,* 8 Mich. 18; *Adams* v. *Pease,* 2 Conn. 481; *Stover* v. *Freeman,* 6 Mass. 439; *Marnier* v. *Shulte,* 13 Wis. 692; *Claremont* v. *Carleton,* 2 N. H. 369; *Commissioners* v. *Withers,* 29 Miss. 29; *Gavit* v. *Chambers,* 3 Ohio, 495; *The State* v. *Pottmeyer,* 33 Ind. 402; *Morgan* v. *Livingston,* 6 Martin, (La.) 216; *Barry* v. *Snyder,* 3 Bush, (Ky.) 266.

As to the rights of riparian proprietors to the use of the flowing water, to fish therein, etc., counsel cited *Agawam Canal Co.* v. *Edwards,* 36 Conn. 476; Angell on Water Courses, (7th ed.) 70, 73; *Hart* v. *Hill,* 1 Whart. 138; *Coolidge* v. *Williams,* 4 Mass. 140; *Beckman* v. *Kramer,* 43 Ill. 447.

That a riparian proprietor owns the soil of the stream, subject to the public easement, the same as in the case of an ordinary highway, see *Cook* v. *Green,* 11 Price, 736; *Sir John Lade* v. *Shepherd,* 2 Str. 1004; *Stevens* v. *Whistler,* 11 East, 51; *Makepeace* v. *Worden,* 1 N. H. 16; *Babcock* v. *Lamb et al.* 1 Cow. 238.

That such proprietor is entitled to all accretions and alluvions, counsel cited the following authorities: Angell on Water Courses, (7th ed.) 68; *Ingraham* v. *Wilkinson,* 7 Pick. 268; *Berry* v. *Snyder,* 3 Bush, 266; *Lovingston* v. *County of St. Clair,* 64 Ill. 56; *Adams* v. *Frotheringham,* 3 Mass. 363; *Ex parte Jennings,* 6 Cow. 518; *Deerfield* v. *Arms,* 17 Pick. 41; *Middleton* v. *Pritchard,* 3 Scam. 510.

The principle governing accretions is applicable to the addition of ice formed over the bed of the stream.

That ice is a commodity and property, see *State* v. *Pott-meyer*, 33 Ind. 402; *Myer* v. *Whittaker*, 55 How. Pr. R. 376; *Mill River Woolen Mill Co.* v. *Smith*, 34 Conn. 462.

As to the measure of damages, counsel cited *Illinois and St. Louis R. R. and Coal Co.* v. *Ogle*, 92 Ill. 53; *McLean Coal Co.* v. *Lennon*, 91 id. 561; *Illinois and St. Louis R. R. and Coal Co.* v. *Ogle*, 82 Ill. 627; *McLean Coal Co.* v. *Long*, 81 Ill. 359; *Robertson* v. *Jones*, 71 Ill. 405.

As to appellee's right to maintain trespass *quare clausum fregit*, the court is referred to *Cox* v. *Glue*, 5 C. B. 533; *Smith* v. *Royston*, 8 M. & W. 381; *Wilcox* v. *Kinzie*, 3 Scam. 218.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of trespass *quare clausum fregit*, brought in the circuit court of Cook county by Shortall, against the Washington Ice Company, for cutting, removing and appropriating, in January and February, 1879, a quantity of ice which had formed over the bed of the Calumet river, within the limits of plaintiff's land, in Cook county. Defendant pleaded the general issue, and *liberum tenementum*. A verdict and judgment were rendered in favor of plaintiff for $562.40, which judgment, on appeal to the Appellate Court for the First District, was affirmed, and defendant appealed to this court.

On the trial, the patent from the United States to Lafrombois and Decant was introduced in evidence, showing that there was no restriction or reservation by the government, and that the *locus in quo* was embraced in the $125\frac{31}{100}$ acres the patent conveyed. Under this patent plaintiff derived title.

From the evidence it appears that the call of $125\frac{31}{100}$ acres contained in the patent required that the bed of the river should be included to make that quantity; that the Calumet river, extending from Lake Michigan westward past the plain-

tiff's premises, where it is between 165 and 200 feet wide, is in fact a navigable river; that the defendant company owned ice-houses on its own property on the next lot east of plaintiff's, and that in operating on the ice it did not go on the plaintiff's land, save as it entered upon the ice; that it first gathered the ice in front of its own land from the river, and then commenced to take the ice opposite the plaintiff's premises.

The court, at plaintiff's request, instructed the jury that the plaintiff was the owner of the whole bed of the river flowing through his premises; that when the water became congealed, the ice attaching to the soil constituted a part thereof, and belonged to the owner of the bed of the stream, and that he could maintain trespass for the wrongful entry and taking the ice; and that the measure of damages, in case of a finding for plaintiff, would be the value of the ice as soon as it existed as a chattel—that is, as soon as it had been scraped, plowed, sawed, cut and severed, and ready for removal. Defendant excepted to the giving of such instruction, and asked the court to instruct the jury that a riparian owner on the banks of a river, navigable in fact, has no property in the ice formed in the midst of the stream, where he has done nothing to pond or separate it; but that any person might, as against such riparian owner, where he could gain access without passing over the shore or banks of the owner, enter upon the ice and remove the same, without cause of action or damage to such riparian owner, and that if such access as above stated had been gained, then at most, plaintiff could recover but nominal damages, even if the action of trespass be sustained,—which was refused, and defendant excepted. The giving and refusing of instructions is assigned as error.

It may be well to inquire, first, whether plaintiff, as riparian proprietor on both sides of the Calumet river, is the owner of the bed of the stream within the limits of his land. By the common law, only arms of the sea, and streams where the

tide ebbs and flows, are regarded navigable. The stream above the tide, although it may be navigable in fact, belongs to the riparian proprietors on each side of it to its centre, and the only right the public has therein is an easement for the purpose of navigation. Chancellor Kent, in his Commentaries, declares it as settled that grants of land bounded on rivers or upon their margins, above tide water, carry the exclusive right and title of the grantee to the centre of the stream, subject to the-easement of navigation, unless the terms of the grant clearly denote the intention to stop at the edge or margin of the river. If the same person be the owner on both sides of the river, he owns the whole river to the extent of the length of his lands upon it. 3 Comm. 427, 428, Marg. And this title to the middle of the stream includes the water, the bed, and all islands. 2 Hilliard on Real Prop. 92; Angell on Water Courses, sec. 5.

This rule of the common law has been adopted in this State, and is here the settled doctrine. It was so held in *Middleton* v. *Pritchard*, 3 Scam. 510, and *Houck* v. *Yates*, 82 Ill. 179, with regard to the Mississippi river where it bounds this State; in *Braxon* v. *Bressler*, 64 Ill. 488, as to Rock river; *City of Chicago* v. *Laflin*, 49 Ill. 172, and *City of Chicago* v. *McGinn*, 51 Ill. 266, in regard to the Chicago river.

The Calumet river then being non-tidal, and plaintiff owning lands on both sides of it, he is the owner of the whole of the bed of the stream to the extent of the length of his lands upon it.

The next question respects the ownership of ice formed over the bed of the river passing through the land. It is objected by defendant that water in a running stream is not the property of any man,—that no proprietor has a property in the water itself, but a simple usufruct while it passes along; but manifestly different considerations apply to water in a running stream when in a liquid state and when frozen.

In *Agawam Canal Co.* v. *Edwards*, 36 Conn. 497, it is said: "The principle contained in the maxim, '*cujus est solum ejus est usque ad cœlum*,' gives to a riparian owner an interest in a stream which runs over his land. But it is not a title to the water,—it is a usufruct merely,—a right to use it while passing over the land. The same right pertains to the land of every other riparian proprietor on the same stream and its tributaries; and as each has a similar and equal usufructuary right, the common interest requires that the right should be exercised and enjoyed by each in such a reasonable manner as not to injure unnecessarily the right of any other owner, above or below."

In *Elliott* v. *Fitchburg Railroad Co.* 10 Cush. 191, SHAW, Ch. J., says: "The right to flowing water is now well settled to be a right incident to property in the land,—it is a right *publici juris*, of such character that whilst it is common and equal to all through whose land it runs, and no one can obstruct or divert it, yet as one of the beneficial gifts of Providence each proprietor has a right to a just and reasonable use of it as it passes through his land; and so long as it is not wholly obstructed or diverted, or no larger appropriation of the water running through it is made than a just and reasonable use, it can not be said to be wrongful or injurious to a proprietor lower down.   *   *   *   Still, the rule is the same, that each proprietor has a right to the reasonable use of it for his own benefit, for domestic use, and for manufacturing and agricultural purposes."

In *Rex* v. *Wharton*, 12 Mod. 510, HOLT, Ch. J., says: "If a river run contiguously between the land of two persons, each of them is, of common right, owner of that part of the river which is next his land."

Hilliard states that a water course is regarded in law as a part of the land over which it flows. 2 Hilliard on Real Prop. 100.

It will thus be seen that the riparian owner, as such, has rights with respect to water in a running stream,—he has a right of use, which right authorizes the actual taking of a reasonable quantity of the water for his purposes. The limitation in extent of the use of the water is, that it shall not interfere with the public right of navigation, nor in a substantial degree diminish and impair the right of use of the water by a lower or upper proprietor as it passes along his land. The only opposing rights are such rights of the public, and such upper and lower proprietors. But when the water becomes congealed, and is in that state, these opposite rights are in nowise concerned. The ice may be used and appropriated without detriment to the right of navigation by the public, or to other riparian owners' right of use of the water of the stream when flowing over their land. The just and reasonable use of the water which belongs to the riparian proprietor would be, in such case of congealed state of the water, the unlimited use and appropriation of the ice by him, as it would be no interference with rights of others. We are of opinion there is such latter right of use, and that it should be held property, of which the riparian owner can not be deprived by a mere wrongdoer. When water has congealed and become attached to the soil, why should it not, like any other accession, be considered part of the realty? Wherein, in this regard, should the addition of ice formed over the bed of a stream be viewed differently from alluvion, which is the addition made to land by the washing of the sea or rivers? And we do not perceive why there is not as much reason to allow to the riparian owner the same right to take ice as to take fish, which latter is an exclusive right in such owner.

In *McFarlin* v. *Essex Co.* 10 Cush. 309, SHAW, Ch. J., remarked: " It is now perfectly well established as the law of this Commonwealth, that in all waters not navigable in the common law sense of the term,—that is, in all waters above the flow of the tide,—the right of fishery is in the owner of

the soil upon which it is carried on, and in such rivers that the right of soil is in the owner of the land bounding upon it. If the same person owns the land on both sides, the property in the soil is wholly in him, subject to certain duties to the public; and if different persons own the land on opposite sides, each is proprietor of the soil under the water to the middle or thread of the river."

The riparian proprietor has the sole right, unless he has granted it, to fish with *nets* or *seines* in connection with his own land.   Angell on Water Courses, sec. 67.

In *Adams* v. *Pease*, 2 Conn. 481, it was held that the owners of land adjoining the Connecticut river above the flowing and ebbing of the tide, have an exclusive right of fishery* opposite to their land, to the middle of the river; and that the public have an easement in the river as a highway, for passing and repassing with every kind of water craft.   So, too, sea-weed thrown upon the shore belongs to the owner of the soil upon which it is cast.   *Emans* v. *Turnbull*, 2 Johns. 313.

The exclusive right in the owner to take the ice formed over his land, is an analogous right to those other ones which are acknowledged to exist in the subjects which have been mentioned, and may with like propriety be recognized. It is connected with and in the nature of an accession to the land, being an increment arising from formation over it, and belonging to the land properly, as being included in it in its indefinite extent upwards.

Ice, from its general use, has come to be a merchantable commodity of value, and the traffic in it a quite important business.   It would not be in the interest of peace and good order, nor consist with legal policy, that such an article should be held a thing of common right, and be left the subject of general scramble, leading to acts of force and violence.

---

*As to the right of fishery in this State, in riparian proprietors, see *Beckman* v. *Kreamer*, 43 Ill. 447, and cases there cited.

In reference to the rule which we here adopt, of assigning to the owner of the bed of a stream property in the ice which forms over it, we may well use, as fitly applying, the language of HOSMER, J., in *Adams* v. *Pease, supra,* in speaking of the common law rule as to the right of fishery, viz: "The doctrine of the common law, as I have stated it, promotes the grand ends of civil society, by pursuing that wise and orderly maxim of assigning to everything capable of ownership a legal and determinate owner."

The views we hold are in accordance with the holding in *The State* v. *Pottmeyer,* 33 Ind. 402, that when the water of a flowing stream running in its natural channel is congealed, the ice attached to the soil constitutes a part of the land, and belongs to the owner of the bed of the stream, and he has the right to prevent its removal. See further, relative to the subject, *Myer* v. *Whitaker,* 55 How. Pr. Rep. 376; *Lorman* v. *Benson,* 8 Mich. 18; *Mill River Woolen Manufacturing Co.* v. *Smith,* 34 Conn. 462; *Brown* v. *Brown,* 30 N. Y. 519.

Defendant claims that it committed no trespass in taking the ice, because the ice in the midst of a stream navigable in fact, is naturally an obstruction to navigation, and that any one has the right, having obtained access independent of the riparian owner, to enter upon the ice and remove it. We said in *Braxon* v. *Bressler,* above cited: "Where the river is navigable, the public have an easement or a right of passage upon it as a highway, but not the right to remove the rock, gravel or soil, except as necessary to the enjoyment of the easement." The same is to be said as to the ice here. But it was not removed as necessary for the enjoyment of the public easement of navigation,—it was for the purpose only of the appropriation of it for defendant's gain.

As to the instruction as to the measure of damages, we think the case is analogous to those where coal is taken from the soil, and that the instruction is sustained by former decisions of this court in those cases. *Illinois and St. Louis*

*R. R. and Coal Co.* v. *Ogle,* 92 Ill. 353; *McLean County Coal Co.* v. *Lennon,* 91 id. 561; *Illinois and St. Louis R. R. and Coal Co.* v. *Ogle,* 82 id. 627; *McLean County Coal Co.* v. *Long,* 81 id. 359; *Robertson* v. *Jones,* 71 id. 405.

Perceiving no error in the giving or refusing of instructions by the circuit court, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*