THE ALBANY RAILROAD BRIDGE COMPANY

*v.*

·THE PEOPLE *ex rel.* Matthews, County Collector.

*Opinion filed June 19, 1902.*

1. BOUNDARIES—*rule relating to lands bordering upon streams applies to boundaries of towns.* The rule that the boundary of land bordering upon a stream not navigable at common law but navigable in fact is the middle of the main channel of the stream, applies to the boundaries of towns and municipal corporations.

2. SAME—*meander line on plat is not intended to denote the boundary.* In surveying fractional portions of public lands bordering upon rivers, meander lines are run not as boundaries of the tract, but for the purpose of defining the sinuosities of the stream.

3. SAME—*effect of mistake in patent of Little Rock island.* The fact that Little Rock island, in the Mississippi river, was patented by the United States, by mistake, as in the State of Iowa when it was in fact in Illinois by a previous survey legally made, does not operate to change the State boundary line as previously made.

4. SAME—*boundary of town of Garden Plain, in Whiteside county.* The western boundary of the town of Garden Plain, in Whiteside county, Illinois, is the middle of the main channel of the Mississippi river, and the railroad bridge extending through such town is properly assessed by the local town assessor to the middle of such channel.

APPEAL from the County Court of Whiteside county; the Hon. HENRY C. WARD, Judge, presiding.

This case arose on objections filed in the county court of Whiteside county by the appellant to the application of the collector for judgment against an order of sale of the bridge of appellant over the Mississippi river, to the middle of the stream, for taxes assessed thereon for the years 1896, 1897 and 1898. The county court, after hearing the issue made, entered judgment and an order of sale, and the bridge company appealed.

Appellant was chartered on February 14, 1857, by the legislature of this State to construct a bridge over that stream. (Laws of 1857, p. 668.) Soon thereafter it organized and constructed the bridge in question, and has

been in actual, open, continuous, exclusive, adverse possession of it for the last twenty-five years or more. This bridge is constructed of steel and rests upon stone piers and abutments. The approach to the east end is an embankment of earth which begins at the east line of section 5, township 21, range 3, east of the fourth principal meridian, in this State, and goes in a westerly direction, and is 330 feet in length, and a trestle or piling structure which commences at the west end of the embankment and extends in the same direction, and is 1397 feet long. The first part of the steel bridge commences at the western terminus of the trestle or piling structure and extends in the same direction 1400 feet to the east bank of Little Rock island. The other portion of the steel or iron bridge commences at the west bank of Little Rock island and extends in the same direction for a distance of 849½ feet to the Iowa shore, in the city of Clinton, in that State. There is a draw in this part of the bridge, and the center of the draw pier is 516 feet and seven and one-half inches west of the western bank of Little Rock island. The center or thread of the stream is between this pier and that bank, and is 460 feet west of it. Little Rock island is 548.2 feet from east to west at the place where the railroad track extends between these two portions of the steel bridge. Under the trestle or pile structure sometimes there is water to the depth of four or five feet and sometimes the ground is nearly dry. Beneath the 1400-foot steel bridge, which rests on eight or nine stone piers, there is always deep water. The island called Little Rock island divides the stream where the bridge crosses the river, and the middle of the channel west of the island is the western boundary of the State and of Whiteside county. The bridge was assessed by the assessor of the town of Garden Plain to the middle of this channel or the State line between Illinois and Iowa, and was assessed in three sections, viz.: The first above mentioned 1397 feet; second, the above mentioned

1400 feet, extending westward to the east bank of Little Rock island; and third, commencing on the west bank of said island and extending west to said boundary line between the two States.

BARGE & BARGE, for appellant.

WALTER STAGER, County Attorney, and JOHN P. WILSON, for appellee.

Per CURIAM: The only objection urged in this court to the tax in question is, that the bridge is not located in the town of Garden Plain, and therefore the assessor of that town had no authority to make the assessment. It is undoubted law that the assessment must be made by the proper lawful authority or it will be void. (*Chicago and Alton Railroad Co.* v. *People,* 98 Ill. 350.) It is admitted by appellant that the bridge is within the State of Illinois and within Whiteside county, which county extends to the western boundary of the State, but it is contended that it is not within any township of Whiteside county, although said county adopted township organization and its territory was divided into townships in 1852, and the town of Garden Plain was then organized and is the only town on the west side of the county that could be held to include within its limits any part of said bridge.

In 1833 and 1834 the government survey of fractional township 21, north, range 3, east of the third principal meridian, was made, and in organizing the town of Garden Plain its boundaries, so far as the record shows, were made the same as those of said fractional township 21. If, therefore, the western boundary of said fractional township 21 extends to the middle of the river, or the western boundary of the State and of Whiteside county, then said bridge is within the town, otherwise it, or at least a considerable part of it, is not, and is not within any township in said county. The bridge begins

at or near the east line of fractional section 5, which is in the western tier of sections in said town, and if said section 5 was of full width it would extend to and beyond the State boundary line, and would include Little Rock island where the railroad running over the bridge crosses said island.    But in 1836 and 1837 fractional township 81, north, range 7, east of the fifth principal meridian, in the then territory of Iowa, was surveyed by the government and Little Rock island formed a part of that survey.    The island contained 39.04 acres, and was afterwards entered by Jonathan L. Pearce, Jr., of Dubuque, and in 1846 he received his patent to it from the government.    If in this survey the middle of the east channel of the river was treated as the boundary line between Illinois and Iowa, it is easy to see why Little Rock island, and that part of the river west of it, were included in said fractional township 81 as being in the territory of Iowa.    But these surveys did not establish such boundary line, and it appears to be clear that so much of said lands included in said last mentioned survey as lay east of the middle of the west channel was included in said fractional township 81 by mistake, for it was then, and is now, in the State of Illinois, and not in Iowa, as seems to have been supposed by the surveyors. That it was so included by mistake is made evident by the fact that in 1869, after the island had been patented to Pearce, Congress passed an act which recited that it had been surveyed and platted as being within the district of lands subject to entry and sale at the land office at Dubuque, in the territory of Iowa, while it really was situated east of the main channel of the Mississippi river, in the State of Illinois, in the district of lands subject to sale at Springfield, Illinois, and recited further the issue of a patent to Pearce, and then provided that the title to the island should be and was ratified and confirmed to said Pearce and his grantees as fully *as if the laws of the United States respecting the survey, entry and sale*

*of the public lands had been fully complied with,* and then further provided that the act should not be construed to deprive any other person of any right or title to said land acquired from the United States. The effect of this act was to confirm the title to the island which had been granted to him under an erroneous survey, but neither said act nor said erroneous survey had the effect to change the lines or boundaries of said fractional township 21, which had been previously surveyed in compliance with the laws of the United States. Therefore the question whether the bridge assessed was within said fractional township 21,—that is, within the town of Garden Plain,— must be determined by the boundaries of the latter, unaffected by the erroneous survey of said fractional township 81, which cannot be held to extend further east than the middle of the west channel of the Mississippi river, the boundary line between the two States.

But it is contended that because the east bank of the east channel of the river was meandered in the survey of fractional township 21, such meander line was made the western boundary of said fractional township, and is therefore the western boundary of the town of Garden Plain. We cannot agree to the view that the meander line is the western boundary of said fractional section 5, in said fractional township 21, or the town of Garden Plain. The government plat in evidence does not show the meander line mentioned in the field notes, but shows the Mississippi river as the western boundary of said section 5 and of said township 21, and the notes themselves show that the lines of the survey of the fractional section intersected the Mississippi river. We are of the opinion that the meander line was not made to mark the western line of said fractional section 5, and consequently of said fractional township 21, but to note the sinuosities of the stream which was itself the line or boundary; and that under the rule at common law, and recognized by the decisions of this court and the decisions

of the Supreme Court of the United States applicable to streams not navigable at common law but navigable in fact, the river being the western boundary line of said fractional section 5 and of said fractional township 21, said line was the middle of the main navigable channel of the river. (*Keokuk Bridge Co.* v. *People*, 176 Ill. 267; *Iowa* v. *Illinois*, 147 U. S. 1; *Middleton* v. *Pritchard*, 3 Scam. 510; *Canal Trustees* v. *Haven*, 5 Gilm. 548; *Houck* v. *Yates*, 82 Ill. 179; *Village of Brooklyn* v. *Smith*, 104 id. 429; *Piper* v. *Connelly*, 108 id. 646; *Fuller* v. *Dauphin*, 124 id. 542; *Hardin* v. *Jordan*, 140 U. S. 371; *Jeffries* v. *East Omaha Land Co.* 134 id. 178.) The same rule is applicable to the boundaries of town and municipal corporations, where nothing appears to restrict such boundaries to the margin of the streams. *Village of Brooklyn* v. *Smith*, 104 Ill. 429; *People* v. *Board of Supervisors*, 125 id. 9.

In *Jeffries* v. *East Omaha Land Co.* 134 U. S. 178, the court said: "No different rule is established by the acts of Congress which provide for the survey and sale of the public lands. The provisions found in section 2395 *et seq.* of the Revised Statutes in regard to the survey of the public lands are re-enactments of statutes passed in 1796, 1800, 1805, 1820 and 1832. According to these provisions, section 21 being a fractional section, because the river cut through it on its north side, the east and west side lines of lot 4 were to be run north to the river. No provision was made for running the north boundary line of lot 4, but the river formed such north boundary without the running of any line there. The statute provided that where the course of a navigable river rendered it impracticable to form a full township of six miles square, and in those portions of fractional townships where no opposite corresponding corners could be fixed to which to run straight lines from established corners, the boundary lines should be ascertained by running from the established corners due north and south or east and west lines, as the case might be, to the water-course, Indian bound-

ary line or other external boundary of such fractional township. In the present case the plat was made in accordance with the statute, showing the river as the northern boundary of fractional section 21, and of lot 4 therein, and as the patent referred to the official plat of the survey, and thus made that a part of the description of lot 4, that description made the river the boundary of lot 4 on the north. In *Railroad Co.* v. *Schurmeir*, 7 Wall. 272, this court said: 'Meander lines are run, in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser.' In preparing the official plat from the field-notes, the meander line is represented as the border line of the stream, and shows, to a demonstration, that the water-course, and not the meander line as actually run on the land, is the boundary."

In *Fuller* v. *Dauphin*, 124 Ill. 542, this court said (p. 547): "The meandered line here does not include the *locus in quo*, but according to the authorities cited a meandered line is not a boundary line, and, as stated by the surveyor, according to the marking on the face of the plat by which the grant was made, Plum river slough was the west boundary of the land granted, which carried the grant to the middle of the slough and embraced the land in controversy." See, also, *Houck* v. *Yates*, 82 Ill. 179, and cases cited.

Further, in *Washington Ice Co.* v. *Shortall*, 101 Ill. 46, we said (p. 52): "Chancellor Kent, in his Commentaries, declares it as settled that grants of land bounded on rivers, or upon their margins, above tide water, carry the exclusive right and title of the grantee to the center of the stream, subject to the easement of navigation, unless the terms of the grant clearly denote the intention to stop at the edge or margin of the river. If the same person be

the owner on both sides of the river, he owns the whole river to the extent of the length of his lands upon it. (3 Com. 427, 428, marg.) And this title to the middle of the stream includes the water, the bed and all islands. (2 Hilliard on Real Prop. 92; Angell on Water-courses, sec. 5.) This rule of the common law has been adopted in this State and is here the settled doctrine. It was so held in *Middleton* v. *Pritchard*, 3 Scam. 510, and *Houck* v. *Yates*, 82 id. 179, with regard to the Mississippi river where it bounds this State; in *Braxon* v. *Bressler*, 64 Ill. 488, as to Rock river; *City of Chicago* v. *Laflin*, 49 Ill. 172, and *City of Chicago* v. *McGinn*, 51 id. 266, in regard to the Chicago river." See, also, *Trustees of Schools* v. *Schroll*, 120 Ill. 509.

But appellant insists that the case falls within exceptions established where an intent appears to limit the boundary to the margin of the stream or to the meander line. We are unable to find that any such intent appears in this case. As we have seen, it does not appear from the mere meandering of the east bank of the river. But it is said it appears from the later survey of fractional township 81, in the then territory of Iowa. It appears, as we have seen, that the island was included in this survey by mistake, on the supposition that it was in that territory and not in the State of Illinois. The surveyors apparently did not know that the middle of the west channel was the boundary line, but their mistake as to the boundary would not operate to change such boundary, which was established by law, and their error in including the island in said last survey would not have the effect of taking it out of a previous survey legally made.

Sections 2395 and 2396 of the statutes of the United States (U. S. Rev. Stat. pp. 438, 439,) provide, among other things:

"Sec. 2395. The public lands shall be divided by north and south lines run according to the true meridian and

by others crossing them at right angles, so as to form townships of six miles square, unless where the line of an Indian reservation, or tracts of land heretofore surveyed or patented, or the course of navigable rivers, may render this impracticable; and in that case this rule must be departed from no further than such particular circumstances require.

"Sec. 2396.   *   *   *   The boundary lines which have not been actually run and marked shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the water-course, Indian boundary line or other external boundary of said fractional township."

We are of the opinion that the acts of Congress were complied with in the survey of fractional township 21, but were not, in the respect mentioned, in the survey of fractional township 81. It follows, therefore, that if the survey of township 21, by its legal effect, included the lands on which the bridge was built, such lands were not excluded by their illegal inclusion in the second survey; and the act of Congress confirming in Pearce the title to the island granted by the erroneous description in the second survey did not have the effect of ratifying or making legal said second survey, but only of confirming the grant to Pearce of the island, made necessary by the error of the surveyors in including it in said second survey.

As we have seen, if this bridge is not in the town of Garden Plain, (although admittedly it is in Whiteside county, and Whiteside county has long been divided into townships under township organization,) it is not in any township of the county and cannot be assessed at all.

While it is our duty to declare the law as it is, though leading to such a result, still it must appear that such is the law applicable to this record, and it is incumbent on appellant to overcome the presumption in favor of the tax, raised by the return and application of the assessor. This it has not done in this case. On the contrary, we are satisfied that the law applicable to the facts of the case supports the judgment of the county court. That judgment will therefore be affirmed.

*Judgment affirmed.*