### John A. Schulte v. Meredith Warren, et al.

1. RIPARIAN OWNERSHIP—*when attaches.* In this State the owner
of land bounded by the margin of a stream, whether navigable or non-
navigable, takes to the middle thread of the stream.

2. HUNT AND FISH—*right of public to.* The right of the public to
hunt and kill wild fowl and to take fish, at least with hook and line,
extends as an incident to the right of navigation to all streams and
lakes navigable in fact, notwithstanding the ownership of the soil un-
derlying such streams and lakes is in private individuals.

GEST, J., dissenting.

Injunction proceeding. Appeal from the Circuit Court of Mason
County; the Hon. THOMAS N. MEHAN, Judge, presiding. Heard in this
court at the May term, 1904. Affirmed. Opinion filed April 20, 1905.

BEACH, HODNETT & TRAPP and LYMAN LACEY, JR., for ap-
pellant.

W. A. POTTS and JESSE BLACK, JR., for appellees.

MR. PRESIDING JUSTICE BAUME delivered the opinion of
the court.

Appellant filed his bill in equity in the Circuit Court of
Mason County to enjoin appellees from entering upon cer-
tain lands therein described and from hunting on said lands.
A temporary injunction was granted, but upon final hear-

ing, the same was dissolved, and a decree entered dismissing the bill for want of equity.

The bill alleges that appellant is the owner in fee simple of certain swamp and overflowed lands located in sections 19, 20, 29 and 30 in township 23, range 7, and sections 24, 25, 26, 35 and 36 in township 23, range 8, in Mason county, Illinois, bounded in part, on the west by the Illinois river and on the north by the north line of Mason county; that the lands are subject to overflow from the Illinois river in times of high water, and as surveyed in fractional subdivisions, completely surrounded a meandered body of water called Clear Lake and its southerly branch or arm, sometimes called Mud Lake; that prior to the placing of certain dams and locks in the Illinois river and the construction of the Chicago Sanitary Ditch, the said lands were valuable as pasture during the late summer and early fall; that the placing of said dams and locks and the construction of said ditch has resulted in permanently raising the water level on said lands to such a height that they are no longer valuable as pasture or for farming; that the only practical value of the land to appellant, in its present overflowed condition, is the exclusive right of hunting thereon the large quantities of wild fowl, and especially wild ducks, that frequent said lands in the spring and fall of the year; that for the purpose of availing himself of the exclusive right to hunt upon said premises, appellant caused notices to be conspicuously posted in numerous places on said lands, notifying the public to refrain from hunting thereon; that each of the appellees was personally notified that appellant was the owner of said lands and was requested to refrain from hunting thereon; that the appellees without the consent of appellant went upon said lands on various days and at various times in November, 1901, and in March and April, 1902, and on other days before and after those dates, with boat and gun and decoys and hunted and shot ducks and other wild fowl thereon; that appellees had been and were acting in concert and combining and confederating together, to deprive appellant of his exclusive right to hunt

on said lands and were threatening to continue so to do: that appellees and each of them are wholly insolvent and execution proof. The appellees answered the bill, denying all of its allegations, except they admitted that said lands were swamp and overflowed lands, situated in the Illinois river bottom; that they were subject to overflow; that locks and dams were placed in the Illinois river, and that a canal had been cut from Chicago. Alleged that appellant has no exclusive right to exclude the public from navigation and hunting and fishing; that the lands are situated in a low, deep basin, underlying or bordering upon a certain body of water or lake, known as Clear Lake, Mud Lake and Clear Lake Slough; that said body of water opens into the Illinois river directly and indirectly, was, in a state of nature, and now is, and has been for a long space of time, to wit, more than twenty years last past, navigable water used by the public as a highway for commercial navigation, and used by the public and by appellees for fishing and hunting; that the public and the appellees have rights of navigation and hunting and fishing in said navigable waters; that appellant can have no monopoly or exclusive control of said navigable waters on said lands for such purposes; that said lands underlie the body of water known as Clear Lake, Mud Lake and Clear Lake Slough; that said body of water is a lake and was meandered in the original government survey of lands bordering thereon; is of sufficient depth and size to enable boats and barges conveying timber, grain and lumber and other articles of commerce over and upon said body of water, to be run and used thereon, and to accommodate navigation of said body of water for commercial purposes and for pleasure; that such body of water is now and was in a state of nature, and for the space of twenty years and upward last past, had been navigable in fact, and used as a highway for boats in commercial navigation in conveying lumber, wood, grain and other products from the lands surrounding said body of water, through said body of water to the Illinois river; that said body of water was in a state of nature, then was, and for more than twenty years had been

used by the public in hunting thereon and in taking fish therefrom; that appellant had no exclusive right of hunting upon said land underlying said body of water, and could not acquire and enjoy such rights to the exclusion of the public, or of the appellees, or any other person, and in attempting so to do, violated the law and the rights of the people of the State. To this answer appellant filed his replication and the cause was thereupon referred to the master to take and report proofs.

At the hearing it was stipulated by appellees that appellant had the record title to the lands described in the bill, except that part of the said lands, if any, included in the boundary of Clear Lake as originally bounded and meandered.

It is established by the evidence that the lands in question are swamp and overflowed lands; that since appellant has owned the same he has paid the taxes thereon and been in the possession and control thereof; that prior to 1901, the lands generally overflowed in the spring and occasionally in the fall of the year, and during high freshets they would be flooded to a depth of from six to twelve feet; that when not flooded, the lands were available for pasture and about twenty acres fit for cultivation; that of the 2,800 acres involved, 1,200 or 1,300 acres was timber and the remainder in willow, buckbrush and open places; that Clear Lake, a body of water, connected at its southerly end with the Illinois river, extended within the lands in question, in two branches or arms, one in a northerly and one in a westerly direction, fractional portions of sections 19, 20, 25, 29 and 30, designated in the record as the "middle ground," lying between the two branches or arms; that in the government survey of the lands involved, they were meandered on both arms of Clear Lake; that in consequence of the construction, by the United States Government about 1890, of a lock and dam in the Illinois river at LaGrange about sixty-five miles below the lands in question, the water level in the Illinois river above said dam and in said Clear Lake was raised about eighteen inches; that owing to the con-

struction of the Chicago Sanitary Ditch in 1901, and the consequent flow of water from Lake Michigan into the Illinois river, the water level in said river was raised about three feet six inches; that since said last named date the lands in question including the portion designated the "middle ground," have been overflowed to a depth of from four to six feet, and that such condition of overflow is permanent; that in seasons of high water, usually in the spring of the year, prior to the construction of the lock and dam and the ditch above mentioned, barges, boats and steam tugs navigated the waters overlying the land in question, for commercial purposes, and loaded freightage of grain at Haven's and Elm landings, located upon said lands or lands adjacent thereto, and that the permanent stage of water overlying said lands since 1901, is sufficient to afford such navigation at all seasons of the year when the water is open for navigation. It is further established by the evidence that the appellees notwithstanding notices posted by appellant in conspicuous places, prohibiting trespassing thereon and personal notice to each of them to desist from so doing, have, by means of boats gone upon the water overlying the lands in question, for the purpose of hunting under claim of right in themselves and the public generally, so to do, and that they proposed to continue to go upon said water for such purpose.

It is urged on behalf of appellant that his title to the lands involved extends to ordinary low water mark in Clear Lake, and that such title was not divested by the permanent submergence of said lands caused by the construction of the dam in the Illinois river at LaGrange and the sanitary ditch from Lake Michigan to the said river; that as the owner of the soil underlying such waters appellant has the exclusive right to fish and hunt thereon, and that the right of the public therein is limited to an easement for the purposes of navigation. On the other hand, it is insisted on behalf of appellees that appellant's title to the lands involved extended only to the water's edge, as it ordinarily stands in Clear Lake, free from disturbing causes; that the

submergence of the lands above referred to, being permanent in its character, the present water's edge must be regarded as the boundary of appellant's lands; that to the extent that appellant's lands are permanently submerged he has been divested of his title thereto or such title is thereby suspended; that the waters overlying said lands being navigable in fact, appellant has no exclusive right of hunting or fishing therein, but that those rights are in the public, incident to the public right of navigation.

While the right to hunt upon the waters overlying the lands described, is the only right directly involved under the pleadings in this case, counsel upon both sides have considered such right as analogous with the right to fish, and have argued the case upon the theory that the determination of the right to fish, was decisive of the right to hunt. Notwithstanding appellant predicates his exclusive right to hunt upon and fish in, the waters in question, upon his ownership of the soil underlying such waters, we do not consider a determination of such ownership of the soil, as necessary to the decision of this case. It may be admitted in the view we are disposed to take of the question that appellant's title to the lands described extended to the water's edge in Clear Lake, as the same ordinarily stood when free from disturbing causes; that the dam and sanitary ditch heretofore mentioned as causing the submergence of said lands, are to be regarded as disturbing causes, not affecting the boundary of said lands and that appellant has title to the lands underlying the waters in question.

Notwithstanding counsel in this case have furnished us with most able and exhaustive briefs, our attention has not been directed to any reported case in this State, passing directly upon the question here involved, and we assume no such case exists.

By the common law, arms of the sea and streams where the tide ebbed and flowed are only deemed navigable, and streams above tide water, although navigable in fact, are not deemed navigable in law. Following this common law doctrine it has been uniformly held in this State, although

there are no tide-waters within its boundaries, that the
owner of land bounded by the margin of a stream, whether
navigable or non-navigable, took to the middle thread of
the stream.    Middleton v. Pritchard, 3 Scam. 510; Albany
Bridge Co. v. The People, 197 Ill. 199.

By the common law, also, the right to take fish belongs
essentially to the owner of the soil in streams or bodies of
water, where the tide did not ebb and flow, and therefore
not navigable in law.    Beckman v. Kreamer, 43 Ill. 447.

In those States of the Union in which there are no tide-
waters the common law test of navigability does not pre-
vail, and those waters are deemed navigable which are
navigable in fact.    In this State the title to all lakes and
like bodies of water, large or small, navigable or non-
navigable, which are meandered in the original survey, has
been declared to be in the State, in trust for all its citizens.
Fuller v. Shedd, 161 Ill. 462.    While this doctrine was
announced as being the true common law doctrine upon the
subject, it may be more properly termed a modification of
the common law doctrine made necessary by the existence
of large lakes and ponds not provided for or contemplated
by the common law and to which the common law was
inapplicable by the established usages of the State and be-
cause it was better suited to the condition of our people.

In Cummings v. The People, 211 Ill. 392, it is said: "The
title to wild game is in the State, without reference to the
ownership of the lands upon which it is found," and we
perceive no reason why the same doctrine of State own-
ership is not appliable to the fish in the waters overlying
appellant's lands.    These waters have now a continuously
permanent connection with the waters of the Illinois river,
and Clear Lake, and when within the last named body of
water it is undeniable that the fish are subject to be taken
by the public.

At common law the public right to fish extends to all
navigable waters and the test of such navigability is the ebb
and flow of the tide.    This test having been discarded as
inapplicable here, and navigability in fact substituted

therefor, no reason exists why the right of the public to hunt and kill wild fowl, and to take fish, at least with hook and line, should not, as an incident to the right of naviga-tion as at common law, extend to all streams and lakes navigable in fact, where the ownership of the soil under-lying such streams and lakes is in a private individual. While the title to soil underlying streams, and bodies of water not meandered in the original survey, has been judi-cially declared to be in the riparian owner and such dec-laration is a property rule in this State, the owner of the soil underlying a stream or body of water navigable in fact has no title to the water or to the fish therein or the wild fowl thereon.

It may be asserted without fear of successful contradic-tion that " from a time whence the memory of man runneth not to the contrary," the people of this State have assumed to have, and in fact have enjoyed, the right to kill wild fowl, and to fish with hook and line in and upon all waters navigable in fact, within the jurisdiction of the State, without any regard to private ownership of the soil under-lying such waters.

The waters in question, being navigable in fact, appellees and the public have the unquestioned right to pass over them in boats, and as incident to that right, no reason is perceived why they may not take fish from such waters with hook and line and hunt for and kill wild fowl thereon or in the air above. The exercise of such rights, so long enjoyed by the public, as incident to the right of naviga-tion, interferes with no property right of the owner of the soil underlying such waters, contravenes no rule of public policy but rather is most in accord with the policy of the State to afford to all its citizens equal facilities in the en-joyment of property common to all.

In Lincoln v. Davis, 53 Mich. 375, it is said by Mr. Jus-tice Campbell: " Such fishing as is done with lines from boats even in narrow streams cannot be complained of by riparian owners. The fish are like any other animal *feræ naturæ*, and in this region have always been regarded as

open to capture by those who have a right to be where they are captured." In Willow River Club v. Wade, 100 Wis. 86, the court in discussing the public right of fishery as an incident of the public right of navigation, said: "The question recurs whether the public right of fishing is included in or an incident of, such public right of navigation. In other words, has the plaintiff as riparian owner, the exclusive right to take fish from the river? The plaintiff certainly has no property in the particles of water flowing in the stream, no more than it has in the air that floats over its land. Its rights in that respect are confined to their use and to preserving their purity while passing. So, the fish in the stream were not the property of the plaintiff at common law, any more than the birds that flew over its land. As indicated, the public right of fishery in tidal rivers was maintained, at common law, in England before the use of steam, when vessels could only be carried up the river by the flow of the sea, and down the river by the ebb of the sea, and consequently when the ebb and flow of the tide practically measured the navigability of the stream. For the same reason, the public should have the right to fish in all the public navigable waters of the State, including all public navigable rivers and streams of the State."

It is earnestly insisted by counsel for appellant that the Supreme Court of this State has by absolutely necessary inference settled the question here involved in favor of their contention that the owner of the soil has the exclusive right to hunt and fish in waters navigable in fact overlying such soil. While, as we have heretofore said, this precise question has not, so far as we are advised, been before the court for determination, it must be conceded that expressions by way of argument are to be found in the opinions of the court, strongly tending to support the view urged by counsel for appellant. It will be observed, however, that in all of these cases the court was dealing with the property rights only of a riparian owner and that the expressions so used were not necessary to the decision of

the questions directly involved. In Mayer v. Erhardt, 88 Ill. 452, the court, quoting with approval, say: "It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

Middleton v. Pritchard, *supra*, was an action in trespass for cutting and carrying away timber belonging to a riparian proprietor. The court in stating the common-law doctrine with reference to streams above tide-water, although navigable in fact, say: "The water and the soil under it, to the center of the current, as well as the right to fish there, are exclusive in the riparian proprietor." In Beckman v. Kreamer, 43 Ill. 447, the riparian proprietor brought trespass to recover damages for fish taken with seines in a so-called, "small lake." It does not appear whether the body of water involved was meandered in the original survey; whether it was navigable in fact; whether it was a lake proper or merely the widening of a stream emptying into the Kankakee river. Referring to the exclusive right of the riparian proprietor at common law to take fish in a non-navigable stream, the court said: "By the common law, a right to take fish belongs so essentially to the right of soil, in streams or bodies of water, where the tide does not ebb and flow, that if the riparian proprietor owns upon both sides of such stream, no one but himself may come upon the limits of his land and take fish there; and the same rule applies so far as his land extends, to wit, to the thread of the stream, where he owns upon one side only. Within these limits, by the common law, his right

of fishery is sole and exclusive, unless restricted by some local law or well-established usage of the State where the premises may be situate."

Braxon v. Bressler, 64 Ill. 488, was an action in replevin by a riparian owner, for rock taken from the bed of a navigable stream, and the court said: "Where the river is navigable, the public have an easement, or a right of passage, upon it as a highway, but not the right to remove the rock, gravel or soil, except as necessary to the enjoyment of the easement. No individual can appropriate to his own use the bed of the stream, without the consent of the adjoining proprietor."

Washington Ice Co. v. Shortall, 101 Ill. 46, was an action of trespass by the riparian owner, for cutting and appropriating ice formed over the bed of the Calumet river, a stream navigable in fact. The court said: "When water has congealed and become attached to the soil, why should it not, like any other accession, be considered part of the realty? Wherein, in this regard, should the addition of ice formed over the bed of a stream be viewed differently from alluvion, which is the addition made to land by the washing of the sea or rivers. And we do not perceive why there is not as much reason to allow the riparian owner the same right to take ice as to take fish, which latter is an exclusive right in such owner." In McFarlin v. Essex Co., 10 Cush. 309, Shaw, Ch. Jr., remarked: "It is now perfectly well established as the law of the commonwealth, that in all waters not navigable in the common-law sense of the term, that is, in all waters above the flow of the tide, the right of fishery is in the owner of the soil upon which it is carried on, and in such rivers that the right of soil is in the owner of the land bounded upon it. If the same person owns the land on both sides, the property in the soil is wholly in him, subject to certain duties to the public; and if different persons own the land on opposite sides, each is proprietor of the soil under the water to the middle or thread of the river." "The riparian proprietor has the sole right, unless he has granted it, to fish with *nets* or

*seines* in connection with his own land.    Angell on Water Courses, sec. 67." "In Adams v. Pease, 2 Conn. 481, it was held that the owners of land adjoining the Connecticut river above the flowing and ebbing of the tide, have an exclusive right of fishery opposite to their land, to the middle of the river; and that the public have an easement in the river as a highway, for passing and repassing with every kind of water craft.    So too, seaweed thrown upon the shore belongs to the owner of the soil upon which it is cast. Emans v. Turnbull, 2 Johns. 313." "The exclusive right in the owner to take ice formed over his land, is an analogous right to those other ones which are acknowledged to exist in the subjects which have been mentioned, and may with like propriety be recognized."

The People v. Bridges, 142 Ill. 30, was a prosecution for a violation of the provisions of an act entitled, " An Act to encourage the propagation and cultivation and to secure the protection of fish," etc. for seining in private non-navigable waters, with a seine, the meshes of which were of less size than was required by statute.    The court cited with apparent approval that portion of the opinion in Beckman v. Kreamer, *supra*, heretofore quoted, and then added : " It may be observed that, under this definition, the fishery right of the land owner in the case before us, is no more exclusive than is that of a riparian proprietor on one or both sides of a stream above tide-water, and both are equally subject to such rules as may be imposed by law or usage upon its exercise."

It is urged that having adopted by statute, the common law of England, the court is bound to follow the same as it there prevailed giving to the riparian proprietor the exclusive right to fish in waters above the ebb and flow of the tide.    The common law of England has been adopted in this State " so far as the same is applicable and of a general nature" (Hurd's Stat., 1903, chap. 28, sec. 1, p. 435), but as was said in Boyer v. Sweet, 3 Scam. 120, " this must be understood only in those cases where the law is applicable to the habits and conditions of our society, and is in har-

mony with the genius, spirit and objects of our institutions." In this State the court has not hesitated to declare the common law rules that the ebb and flow of the tide was the only test of navigability, and that the title to the beds of all lakes and ponds above tide-water was in the riparian proprietor, as inapplicable and not suited to the condition of our people. If contrary to the rule of the common law, the State has title to all the lakes and ponds, navigable or non-navigable, within its boundaries, which were meandered in the original survey, in trust for the use of all the people for purposes of hunting, fishing, boating and the like, we do not perceive upon what ground the people may be excluded from the enjoyment of like privileges in any and all waters navigable in fact. The streams and bodies of water, navigable in fact, within the boundaries of the State are the very places to which all the people, having free access for the purposes of navigation, resort for purposes of boating, hunting and fishing, and in and upon such waters is largely expended the public money for the preservation, protection and propagation of fish and the protection of wild water fowl.

In Fuller v. Shedd, 161 Ill. 462, it is said: "The policy of the State in recent years has been to stock its waters, both streams and lakes, with fish, as a means of giving cheap and valuable food to her citizens, and with this purpose regular appropriations and expenditures are made. If we depart from the reasonable rule we have established, the small non-navigable lakes would become the private waters of riparian owners, pertinent to their lands, with exclusive rights thereon as to boating, fishing and the like, from which the body of the people would be excluded—a principle inconsistent with and not suited to the condition of our people or called for as a rule of law."

If the rule of the common law applicable to small non-navigable lakes, was properly discarded by the court as "inconsistent with and not suited to the condition of our people or called for as a rule of law," much more reason exists, in our opinion, why such common-law rule should

not prevail as to larger bodies of water, navigable in fact.

The decree of the Circuit Court dismissing the bill for want of equity was right in our judgment and is affirmed.

*Affirmed.*

Mr. Justice Gest, dissenting.