## THOMAS HARRIS

### *v.*

## AARON HATFIELD.

1. ACTION — *party participating in unlawful act, can not recover for damages occasioned.* Courts of justice will not assist a party who has participated in a transaction forbidden by statute, to assert rights growing out of it, or to relieve him from the consequence of his own illegal act.

2. Where a plaintiff's own unlawful act concurs in causing the damage he complains of, he can not recover compensation for such damage.

3. TEXAS CATTLE. In a suit brought to recover damages on account of disease communicated to the cattle of the plaintiff by Texas cattle brought into this State by defendant, in the month of July, it appeared that the plaintiff had put his cattle, among which were the Texas cattle, into his own pasture, and that soon afterward the plaintiff discovered that some of them were Texas cattle, and that he still kept the possession and control of them, and bought some of them, and kept them with his other cattle: *Held*, that he was only entitled to recover for such damage as was occasioned before he knew the character of the cattle, and that he could not recover for any damages caused afterward.

APPEAL from the Circuit Court of Menard county; the Hon. CHARLES TURNER, Judge, presiding.

Mr. N. W. BRANSON, and Mr. EDWARD LANNING, for the appellant.

Messrs. KETCHAM, McNEELY & EDGAR, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action brought by Hatfield against Harris, to recover for damages resulting from the latter owning and having in his possession, within this State, Texas or Cherokee cattle, in violation of the statute upon that subject, approved April 16, 1869. Laws 1869, p. 402.

The plaintiff recovered and defendant appealed to this court.

One of the errors assigned is the refusal of instructions

asked by the defendant. Thirteen in number were so asked, and all refused. Among them is the following one:

" 11. The jury are instructed that, although the jury may believe, from the testimony, that the plaintiff's cattle died or were damaged by the disease known as the Texas cattle fever, and that the cattle of the plaintiff so dying or damaged were infected by Texas or Cherokee cattle that had been brought into the State of Illinois by the defendant, yet the jury ought not to find a verdict for plaintiff, if the jury also believe, from the testimony, that the plaintiff, before his said cattle were infected, received and kept in his, the plaintiff's, pasture and possession, the cattle that communicated the Texas fever, knowing at the time that said cattle so infecting plaintiff's cattle were Texas or Cherokee cattle."

The second section of the act above referred to provides that it shall not be lawful for any person or persons within this State to own or have in possession or control, any Texas or Cherokee cattle, at any time, which may have been brought into this State at any time except between the first day of October and the first day of March following, of each year. The third section makes the doing so an indictable offense, punishable by fine and imprisonment.

The evidence discloses, without contradiction, that the defendant below, on July 3, 1872, brought into this State, from St. Louis, Mo., 64 head of cattle, among which were 14 Texas or Cherokee cattle, and, on that same day, placed them all in plaintiff's pasture field, where the latter had 41 head of native cattle. to be kept for a time for an agreed compensation; that, on July 8 following, plaintiff bought of defendant 50 of the cattle of the latter, to be selected by the plaintiff out of the 64. Plaintiff selected his 50 head, taking 6 of the Texas or Cherokee cattle, and afterward exchanged with defendant one of the number he had selected, a native, for a Cherokee. Defendant took his remaining 14 cattle away

three days after the purchase, and plaintiff kept the 50 he had so purchased in his pasture. He first noticed disease among his cattle about July 12 or 15. Two were taken sick and got well.. It was August 24 before he saw any other sickness. The balance due on the cattle purchased, some $800, was paid by plaintiff about 33 days after the purchase, he making no complaint about the cattle, and saying they were doing well.

There was evidence tending to show that, previous to the time when the cattle were put into the pasture field, plaintiff had notice that the cattle had just been brought from St. Louis, Mo., and that there were Texas or Cherokee cattle among them; that, after they were put in, he saw them every day, watering them himself up to the time of his purchase; that he had dealt extensively in cattle for a number of years, and was a good judge of cattle; that Texas or Cherokee cattle have certain marked characteristics, rendering them readily distinguishable, by a judge of cattle, from native ones, and that these Texas or Cherokee cattle had those characteristics.

It will thus be seen that there was not wanting evidence upon which to base this instruction. In having these Texas or Cherokee cattle in his possession or control, with knowledge that they were such, and had been brought into the State between March 1 and October 1 next following, the plaintiff would have been guilty of a criminal offense. All the damages complained of were in consequence of plaintiff having in his possession and control these Texas or Cherokee cattle. And if such possession or control was received with the knowledge aforesaid, then the plaintiff's damages were because of his violation of the statute, and the consequence of his own unlawful act.

The general principle is undoubted that courts of justice will not assist a person, who has participated in a transaction forbidden by statute, to assert rights growing out of it, or to

relieve himself from the consequences of his own illegal act. *Hall* v. *Corcoran*, 107 Mass. 251.

The principle is a familiar one, and its application in various modes is of frequent occurrence in courts of justice. For instances of its application in denying a right of action to a party for an injury sustained while violating a public statute or a by-law, and where his unlawful act concurred in causing the injury, see *Worcester* v. *Essex Merrimac Bridge Co.* 7 Gray, 459, *Stanton* v. *Metropolitan Railway Co.* 14 Allen, 485, *Heland* v. *City of Lowell*, 3 Allen, 407. In the latter case, the principle is thus declared: "And it is the established law, that, when a plaintiff's own unlawful act concurs in causing the damage that he complains of, he can not recover compensation for such damage."

We think the case presented by this instruction falls within the application of this principle.

The person who brings such proscribed cattle into the State, and he who owns, and he who has them in his possession or control within the State, under the circumstances stated, are alike offenders against the statute, and punishable criminally. By the 5th section of the act, all such persons are made jointly and severally liable, in a civil action, for damages occasioned by such cattle. And for the further reason, that the parties are equally culpable, no cause of action would arise in such case.

As an abstract proposition, the instruction, so far as respects the criminal aspect, may be subject to the criticism that it leaves out the element of the cattle having been brought into the State within the period prohibited by the statute. That is, by the act, a condition of criminal liability, though not of civil liability for damages. The evidence was so clear that the cattle had been recently brought into the State, with notice of it to the plaintiff, and there being no question upon the point, it might be regarded as virtually a conceded fact.

By the refusal of all defendant's instructions, the jury were left entirely uninstructed as to the law of his defense. We

think that he was entitled to have this instruction, which has been considered, given, and that there was error in refusing it.

The 12th instruction was a similar one.

The evidence was much fuller to the point, that plaintiff, soon after the cattle were admitted to his pasture, became aware that there were Texas or Cherokee cattle among them, than that he had notice of such fact before or at the time they were turned into the pasture; and instructions were asked by defendant to the effect that, if plaintiff, knowing that the cattle of defendant were brought into the State in the month of July, permitted the cattle to remain, without objection, on his pasture after he had ascertained that there were Texas or Cherokee cattle among them, and that he afterward purchased a part of such Texas or Cherokee cattle, and continued in possession of the same after such purchase, and that the damage resulted from such cattle being in his possession, then the jury should find defendant not guilty.

These instructions were faulty in not discriminating between damages resulting from the cattle being in plaintiff's possession before and subsequent to the time of ascertaining that there were Texas or Cherokee cattle among them. From having in possession the cattle for a space previously to such time, a cause of damage might have been occasioned, from which damage might have resulted some time afterward. For such a prior cause of damage, defendant would be liable, on the hypothesis of the instructions, but not for any cause of damage arising from the subsequent possession of the cattle. The instructions should have limited defendant's non-liability to any damages arising in consequence of plaintiff having in his possession any of said Texas or Cherokee cattle after the time of ascertaining that they were such.

The instructions given for the plaintiff were objectionable in laying down the rule of defendant's liability as absolute, without any reference to the plaintiff's want of knowledge of the character of the cattle. In view of the evidence on

the point of knowledge, they should have been qualified, in that respect, in accordance with the views here expressed.

Objection is taken to the admission of the testimony of the witnesses, Kirby J. Watkins and Ensley, as to certain conversations had between them and the defendant. We do not perceive that the statements of defendant proved by these witnesses had any legitimate bearing upon the issue, and as they were but calculated to excite prejudice in the minds of the jury against the defendant, they should have been excluded.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*