## JACOB FRYE *et al.*

*v.*

## CHICAGO, BURLINGTON AND QUINCY RAILROAD CO.

1. STATUTE CONSTRUED—*against Texas cattle, etc.* The ninth section of the act of 1869, relating to Texas and Cherokee cattle, qualifies the first section as to what cattle are prohibited from being brought into the State, but does not apply to the provisions of the second section.

2. TEXAS CATTLE. By the act of 1869, Texas and Cherokee cattle may be brought into this State at any time, if first acclimated or wintered in either of the States of Kansas, Missouri, Nebraska or Wisconsin; but it is made a penal offense to own such cattle, unless they shall have been brought into this State between October 1 and March 1 of the following year.

3. CONSTRUCTION—*rule as to statutes.* Where the object of the legislature is plain, and the words of the act unequivocal, such a construction should be adopted as best to effectuate the legislative will; but a construction not supported by the *words* used should not be adopted, even though the consequences may lead to defeat the object of the act.

4. DECLARATION—*in suit for bringing Texas cattle into State.* In an action against a defendant bringing Texas and Cherokee cattle into this State, by one who purchased the same, to recover damages sustained by him for a fatal disease communicated to his native cattle, etc., the declaration will be fatally defective if it fails to aver that the cattle were brought into the State between October 1 and the 1st of the following March, as, without this, his purchase and ownership is illegal, and, being a violation of the law, he can maintain no action for an injury growing out of his wrongful act.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. HAWES & LAWRENCE, for the appellants.

Messrs. WALKER, DEXTER & SMITH, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from a judgment of the Superior Court of Cook county, in an action on the case, to recover damages for an alleged violation by the Chicago, Burlington and Quincy Railroad Company, of the act of April 16, 1869, prohibiting the introduction of Texas or Cherokee cattle into this State.

There are five counts in the declaration, to which, and to each count thereof, there was a demurrer, and judgment thereon for the defendants.

The first count is framed on the first section of that act, and alleges that, on the 13th day of June, 1872, the defendants wrongfully and unlawfully brought into this State eighty head of Texas cattle and sixty head of Cherokee cattle; that they delivered these cattle to the firm of Keenan & Co.. at the Union Stock Yard of Chicago; that they afterwards came into the possession of plaintiffs, by purchase from one Thompson; that, after purchasing them, they placed them on a farm owned by plaintiff Frye in Peoria, for the purpose of fattening the same for market; that they had on the farm, in an enclosure adjoining the one in which these cattle were herded, forty-four head of native cattle, sound and in a healthy condition at the time. It was further averred in this count that, at the time they purchased these cattle, they were informed and told that every one of them had been introduced into one or more of the States of Kansas, Missouri, Iowa or Wisconsin, prior to the first day of January, 1872, and that they had no knowledge to the contrary until a long time thereafter, and until these cattle had communicated a fatal disease to their native cattle; and they further aver that they bought these cattle as and for Texas and Cherokee cattle that had been wintered in some one or more of these named States, and as and for cattle that it was not unlawful or illegal to bring into this State at the time they were so brought into the State by the defendants, and that they were so informed at the time they purchased; and it is further averred that these cattle so brought into this State by defendants did not come within the exception provided for in the ninth section of the act; and it is further averred that from these cattle plaintiffs' other native cattle contracted a disease, of which they died.

The second count is claimed to be based on the second section of the act, and alleges that defendants were, on the 14th day of June, 1872, wrongfully and illegally, and contrary to the statute, in the possession of sixty head of Texas and sixty

head of Cherokee cattle, which had not been brought into this State between the first day of October of any year and the first day of March of the following year, with averments as in the first count.

The other counts are not materially different, so far as the point raised is involved.

Appellants contend, as the demurrer admits the facts well pleaded to be true, it involves the admission that defendants had violated the law, and were liable to the action, as a loss had been occasioned to them thereby. They insist that section nine should be so construed as to qualify section two of the act.

Section nine provides that Texas and Cherokee cattle, as mentioned in the act, shall be taken to mean a class or kind of cattle, without reference to the place from which they came: provided, it shall not apply to section one of the act, when such Texas or Cherokee cattle shall have been introduced into either of the States of Kansas, Missouri, Nebraska, Iowa or Wisconsin, prior to the first of January, before being brought into this State; but the burthen of alleging and proving that such cattle were introduced into either of the above named States prior to January 1, and wintered there the remainder of the winter, shall be upon the defendant: provided, that the official certificate of the county clerk of the county where such cattle have been wintered shall be *prima facie* evidence thereof.

The provisions of section one, to which reference is made in the above section nine, are, that it shall not be lawful for any person or persons, railroad company or other corporation, or any association of persons, to bring into this State any Texas or Cherokee cattle, except between the first day of October and the first day of March following, in each year.

Section two provides that it shall not be lawful for any person or persons, or railroad company or other corporation, or association of persons whatever, within this State, to own, or have in possession or control, any Texas or Cherokee cattle, at any time, which may have been brought into this State at any

402        FRYE *et al. v.* C., B. & Q. R. R. Co.        [Sept. T.

Opinion of the Court.

time except between the first day of October and the first day of March following, of each year.   R. S. 1874, ch. 8, p. 141.

Section one of the act expressly inhibits the introduction of Texas or Cherokee cattle into this State at any time except between the first day of October and the first day of March following, of each year.

The ninth section qualifies this provision by a further exception of such cattle as may have been introduced into either of the States named prior to the first day of January before being brought into this State.   The first section prohibits the bringing into this State any such cattle except between the first day of October and the first day of March following, of each year, but is not affected by section nine, as it has, by its express terms, no application to this section.   Consequently, such cattle as have been first introduced into the States named, may be brought into this State at any time thereafter.

The second section is on another subject, and makes it unlawful for any corporation or person to own Texas or Cherokee cattle, at any time, unless they shall have been brought into this State between the first day of October and the first day of March.   It seems plain, therefore, from these provisions, that this kind of cattle may be brought into the State if first acclimated by being wintered in some one of the States named. But section two makes it a penal offense to own such cattle unless they shall have been brought to this State between October 1, and March 1 of the following year.

This is the conclusion to which the language used by the legislature impels us, and this in obedience to a well recognized rule of construction of a statute, that is, where the object of the legislature is plain and the words of the act unequivocal, courts ought to adopt such a construction as will best effectuate the intention of the legislature, but they must not, even in order to give effect to what they may *suppose* to be the intention of the legislature, put upon the provision of a statute a construction not supported by the *words*, even though the consequences should be to defeat the object of the act.   Dwarris on Statutes, 702; Smith's Com. 830, sec. 714.

The fittest course in all cases where the intention of the legislature is brought in question is, to adhere to the *words* of the statute, construing them according to their nature and import, in the order in which they stand in the act, rather than to enter upon an inquiry as to the *supposed* intention. Smith's Com. 830, sec. 715.

The result is, according to this interpretation of this law, if cattle of this proscribed class have been acclimated in the States named, they may be brought to this State, but no person can own or control such cattle in this State unless they shall have been brought into this State between the first day of October and the first day of the following March.

Appellants, in their declaration, do not aver these cattle, purchased and owned by them, were brought into this State at the time specified. On the contrary, there is at least an implied admission they were not. Consequently, appellants themselves violated the law as prescribed in the second section, and were tort-feasors, amenable to the punishment provided by the law. Had they not violated the law, they would not have incurred this loss. This court has no more right to apply the qualification of section nine to any other section than to section one. It would be usurping legislative power, and making as law that which the legislature have not declared to be the law.

The rule is well settled that, if a party suffers injury whilst violating a public law, the other party being also a transgressor, he can not recover for the injury, if his unlawful act was the cause of the injury. The party bringing the cattle to the State may have violated the law—appellants were no less transgressors, and the maxim, *in pari delicto malior est conditio defendentis*, must apply. In *Harris* v. *Hatfield*, 71 Ill. 298, similar views were expressed.

The construction given by the Superior Court to this statute, by sustaining the demurrer, was in accordance with the views herein expressed, and the judgment of that court must be affirmed,

*Judgment affirmed.*