CHARLES GILMORE

*v.*

MORRIS W. FULLER.

*Opinion filed October 25, 1902.*

1. ACTIONS AND DEFENSES—*participator in charivari cannot recover damages for accidental injury.* A participator in a charivari party, which is disturbing the peace of a wedding assemblage by firing guns, ringing bells and making other discordant noises, who is injured by the carelessness of another member of the party in handling his revolver, cannot recover damages from the latter in an action at law, since both parties are participants in an unlawful act.

2. INSTRUCTIONS—*when jury should be instructed to find for defendant on a charge of assault.* The jury should be instructed to find for the defendant as to counts of the declaration in a civil suit which charge an assault, where there is no evidence tending to show that the defendant intended to do any harm to the plaintiff or that the injury inflicted upon the plaintiff was intentional.

3. SAME—*when instructions are inherently defective.* If the instructions lay down contradictory rules for the guidance of the jury which are unexplained, and following one of said rules might lead to different results than would be arrived at by following the other, then they are defective and misleading.

*Gilmore* v. *Fuller,* 99 Ill. App. 272, reversed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Piatt county; the Hon. W. G. COCHRAN, Judge, presiding.

This is an action of trespass on the case, brought on April 7, 1899, by the defendant in error, a minor, suing by his next friend, Hollis D. Fuller, against the plaintiff in error, who, at the time of the commencement of the suit, was also a minor, but since the trial has attained his majority. The action was brought to recover damages for a personal injury. The trial below before the court and a jury resulted in verdict and judgment in favor of defendant in error for the sum of $1500.00. An appeal was taken to the Appellate Court, where the judgment of the circuit court of Piatt county has been affirmed. The present writ of error is prosecuted from such judgment of affirmance.

The declaration consists of three counts. The first and second counts charge that plaintiff in error made an assault upon defendant in error, and shot off a certain pistol, then and there loaded with gunpowder and leaden balls, at and against the defendant in error, and thereby then and there shot and wounded defendant in error in so grievous a manner that his life was despaired of, etc. The third count charges that the plaintiff in error, having in his possession a certain pistol loaded with gunpowder and leaden balls, so carelessly and negligently handled said pistol that the same, by the negligence and carelessness of plaintiff in error was fired and shot off, by means whereof plaintiff in error, by his carelessness and negligence in handling said pistol, shot and wounded defendant in error in so grievous a manner that his life was despaired of, etc.

The plaintiff in error filed several pleas, the first of which was not guilty. The second plea averred that the defendant in error and plaintiff in error, and a large number of other persons, at the residence of Daniel Hirsch were engaged in a "charivari" of a young married couple, and that the defendant in error and the plaintiff in error, and other persons, with guns, revolvers, sleigh-bells and

other instruments, were then and there willfully disturb-
ing the peace and quiet of the family of said Daniel
Hirsch and of the neighborhood, by shooting guns, re-
volvers, pistols, ringing sleigh-bells, blowing horns and
other instruments, and that a revolver in the hands of
the plaintiff in error, by accident and without his will or
fault or neglect, was discharged, by which the defendant
in error, without the intention or neglect of the plaintiff
in error, was injured, etc.   The third plea was a plea of
not guilty signed by the guardian *ad litem* of the plain-
tiff in error.   The fourth plea was a special plea of the
guardian *ad litem* for plaintiff in error, and averred that
defendant in error and plaintiff in error were together at
the residence of Daniel Hirsch engaged in a "charivari,"
and that a revolver in the hands of plaintiff in error, by
accident and without the will or fault of plaintiff in error,
and while the barrel thereof was pointed in an opposite
direction from the defendant in error, was discharged, by
which the defendant in error, without the negligence or
fault of the plaintiff in error, was injured.

The facts were substantially as follows:   On Febru-
ary 2, 1898, defendant in error and plaintiff in error were
attending school in DeLand, Piatt county.   Plaintiff in
error lived at the home of his father in the country, and
defendant in error with his mother in DeLand.   On the
evening of that day there was a wedding at the residence
of Daniel Hirsch, living about two miles from DeLand.
On the evening of that day some ten or twelve boys,
including the parties to this suit, living in the neigh-
borhood of DeLand, met at the school house pursuant to
a previous arrangement to engage in a "charivari" of a
newly married couple at the house of Daniel Hirsch, liv-
ing about a half mile distant from the school house.   They
took from the school house a bell, and provided them-
selves with bells, pans, ploughshares, revolvers, and a
shot-gun, and other implements for making a noise.   They
reached Hirsch's home in a body between nine and ten

o'clock. There, with a shot-gun, revolvers, ploughshares, sleigh-bells, dinner-bells, etc., they approached near the house, where the guns and pistols were discharged, and the other instruments were put in motion, and all the noise was made, which they could make with such instruments. Considerable excitement and commotion were created in the house among the women. The hired man came to the gate of the yard, and asked them not to fire off fire-arms, as it would frighten the horses of the guests there hitched.

Both defendant in error and plaintiff in error participated in this "charivari," and were so engaged at the time the injury complained of was received by defendant in error. Plaintiff in error fired his pistol six times into the air over his head, then put in three more cartridges—all the cartridges he had—and then held the pistol above his head in his right hand, pointed upward and pulled the trigger three times, but the last cartridge did not explode. While he was either in the act of bringing the pistol down, or unbreeching it, it exploded and shot defendant in error in the face near the eye. At this time Gilmore was about two feet east of the house facing to the east. Fuller and Cathcart were about ten feet east of the house facing to the west, almost immediately in front of Gilmore, and were at the time engaged in ringing a strand of sleigh-bells. The evidence of defendant in error tends to show, that plaintiff in error took down his hand and held the barrel in his left hand across his body, the barrel pointing north, and attempted to take out the shells, when the pistol was discharged. The Appellate Court in its opinion says: "There is a conflict in the testimony as to whether the explosion occurred while he (plaintiff in error) was bringing the revolver from the perpendicular position in which he had been holding it, or while he was making an effort to unbreech it with both hands at about the level of his waist." When defendant in error was wounded, he was at once taken into

the house of Mr. Hirsch, and doctors were sent for who treated the wound.

The wound appears to have healed up, and, after being confined to the house on account of it for about a month, defendant in error again went to school, and also engaged in work as a clerk in some store in the town. The physicians probed for the bullet, but were unable to extract it. The medical experts seemed to differ in their opinion as to the nature and character of the wound, and its probable effect upon the general health of defendant in error. The evidence tends to show that defendant in error suffers pain when he attempts to read by lamplight, and when his eyes are exposed to the cold. It also appears that the wind causes his eye to moisten and tears to come. There is some evidence tending to show that the bullet, which struck defendant in error, was a spent or deflected ball.

REED & EDIE, and HERRICK & HERRICK, for plaintiff in error:

Whoever willfully disturbs the peace and quiet of any neighborhood or family by loud or unusual noises, etc., shall be fined, etc. Rev. Stat. chap. 38, sec. 55.

Whoever willfully interrupts or disturbs any school or other assemblage of people met for a lawful purpose shall be fined, etc. Rev. Stat. chap. 38, sec. 60.

The act of one while engaged in a common purpose is the act of all. 1 Greenleaf on Evidence, sec. 111; *Higgins* v. *Minaghan,* 11 L. R. A. 138.

The general doctrine that courts of law will not permit a party to prove his own illegal acts in order to establish his case is well settled, and therefore a party who acts in defiance of law has no just claim to its agency in obtaining redress for the damage he may have sustained in the course of his illegal transactions. The rule of law is to leave the parties where it finds them, giving no relief and no countenance to claims of that character on

grounds of public policy. Beach on Cont. Negligence, sec. 47; Cooley on Torts, (2d ed.) 151; *Devor* v. *Knauer*, 84 Ill. App. 184; *Way* v. *Foster*, 1 Allen, 408; *Smith* v. *Railroad Co.* 120 Mass. 490.

By the common law as well as by our statutory definition, an assault and battery is a successful attempt to commit violence to the person of another, and necessarily intentional. And the intention to do harm is of the essence of an assault. Hilliard on Torts, (3d ed.) p. 181, secs. 8, 9; 2 Greenleaf on Evidence, sec. 83.

Willfulness or intention on the part of a person to do an injury to the person of another is essential to the establishment of liability in an action of trespass for an assault and battery. 1 Hilliard on Torts, 182; *Paxton* v. *Boyer*, 67 Ill. 132; *Razor* v. *Kinsey*, 55 Ill. App. 605.

TIPTON & TIPTON, for defendant in error:

To deprive party of redress because of his illegal conduct, the illegality must have contributed to the injury. Cooley on Torts, 178; *Devor* v. *Knauer*, 84 Ill. App. 189.

If a person is injured by the discharge of a gun in the hands of another who has entire control of it, the burden of proof is cast upon the latter to prove that the gun was not fired at him either intentionally or negligently, but that the result was inevitable and without the least fault on his part. (*Atchison* v. *Dullam*, 16 Ill. App. 42.) In other words, the defendant must show the injury was inevitable and that the defendant was not chargeable with any negligence. *Morgan* v. *Cox*, 22 Mo. 373; *Castle* v. *Durgee*, 3 Keys, 169; *Judd* v. *Ballard*, 64 Vt. 169; *Vincent* v. *Steinhour*, 7 id. 62; *Morris* v. *Platt*, 32 Conn. 75; *Leane* v. *Bray*, 3 Rast. 593; *Bullock* v. *Babcock*, 3 Wend. 381; *Claflin* v. *Wilcox*, 18 Vt. 683; *Welch* v. *Durandt*, 36 Conn. 182; *Babel* v. *Manning*, 112 Mich. 24; *Tally* v. *Ayres*, 3 Sneed, 687.

A very high degree of care is required from all persons using fire-arms in the immediate vicinity of other persons. Sedgwick on Damages, sec. 587.

Mr. Chief Justice Magruder delivered the opinion of the court:

At the close of the evidence of the defendant in error, the plaintiff in error submitted a written instruction to the court, directing the jury to find a verdict for the defendant. This instruction was refused, and exception was taken to such refusal. At the close of all the testimony, the plaintiff in error again made a motion to withdraw the evidence from the jury and to instruct the jury to find for the plaintiff in error. A written instruction to this effect was refused by the court, and plaintiff in error took exception to such refusal. We are of the opinion that the instruction should have been given, upon the ground that the evidence does not tend to support a cause of action.

Section 56 of division 1 of the Criminal Code provides, that "whoever willfully disturbs the peace and quiet of any neighborhood or family, by loud or unusual noises, or by tumultuous or offensive carriage, threatening, traducing, quarreling, challenging to fight or fighting, or whoever shall carry concealed weapons, or in a threatening manner display any pistol, knife, slung-shot, brass, steel or iron knuckles, or other deadly weapon, shall be fined not exceeding $100.00." Section 60 of division 1 of the Criminal Code provides, that "whoever willfully interrupts or disturbs any school or other assembly of people, met for a lawful purpose, shall be fined not exceeding $100.00." (1 Starr & Curt. Ann. Stat.—2d ed.— pp. 1266, 1267.)

Unquestionably defendant in error and plaintiff in error were both engaged in willfully disturbing the peace and quiet of the family of Daniel Hirsch by loud and unusual noises. The enterprise, in which they were both engaged at the time of the injury, was an unlawful one. The fact, that it is called a "charivari," does not make it any the less unlawful. The assemblage around the house of Daniel Hirsch in the night time, there engaged in disturbing a family in which a wedding had occurred,

was an unlawful and illegal assemblage, and not only so, but a gathering of illegal trespassers. They were all, including both plaintiff in error and defendant in error, engaged in the same unlawful enterprise. Defendant in error says that he did not know, that the plaintiff in error, Gilmore, had a revolver in his possession before they went upon the premises of Hirsch, but his own testimony shows that, after they reached the premises of Hirsch, he saw the revolver in the possession of plaintiff in error, and saw and heard it fired off more than half a dozen times before he was wounded. After defendant in error witnessed the firing of the revolver by plaintiff in error, he still continued to join in the making of the noises, which disturbed the family, and was, with another young man named Cathcart, engaged in shaking a strand of sleigh-bells.

Webster, in his dictionary, defines charivari as "a mock serenade of discordant noises made with kettles, tin horns, etc., designed to annoy and insult." Worcester, in his dictionary, defines a charivari as "a vile or noisy music made with tin horns, bells, kettles, pans, etc., in derision of some person or event; a mock serenade."

In *Higgins* v. *Minaghan*, 78 Wis. 602, which was an action for damages brought for the shooting of the plaintiff in the leg, while he and others were giving the defendant a charivari, the plaintiff's counsel on the *voir dire* was permitted to ask, against the objection of the defendant, whether the jurors had any prejudice for or against charivari parties, or entertained any prejudice against parties that engaged in a charivari, and the Supreme Court of Wisconsin there said: "The learned circuit judge seems to have had some doubt about the propriety of this course of examination, and we think it was wholly wrong. Every good, law-abiding citizen must and does condemn such unlawful and riotous assemblies. They are wholly indefensible in law and morals, and are reprobated by every well-disposed person.

With the same propriety a juror, called upon to try a man charged with a criminal act, might be asked if he had or entertained any bias or prejudice for or against crime or criminals. * * * We do not understand that a prejudice, entertained by a juror against a particular crime, constitutes a sufficient ground for excluding him, when called to try a person for such offense. * * * It would be almost impossible to obtain a panel in a case, if every citizen was excluded from it, who had a prejudice against or was opposed to charivari, which is in law a crime." In the same case it is also said: "The charivari parties, consisting of the crowd in front of or upon the defendant's premises, constituted an unlawful assembly; and by their transactions, conduct, and behavior became what is known in the law as a 'riot,' tending to the disturbance of the peace, and the annoyance, if not the terror, of the defendant and others in the vicinity; they were trespassers in the highway. * * * The rioters themselves knew, or should have known, that their acts and conduct about the house, in the night, were well calculated to produce terror and fright and injuriously affect the defendant's family. * * * Here, the rioters were firing guns, blowing horns, drumming on pans, and making all kinds of hideous noises," etc.

What results from the fact, that defendant in error and plaintiff in error were both engaged in such an unlawful and criminal enterprise, as is above described? In *Harris* v. *Hatfield*, 71 Ill. 298, a suit was brought to recover damages on account of disease, communicated to the cattle of plaintiff by Texas cattle brought into this State by defendant in the month of July in violation of a statute forbidding such act, it appearing that the plaintiff had put his cattle, among which were the Texas cattle, into his own pasture; that soon afterward the plaintiff discovered, that some of them were Texas cattle, and still kept the possession and control of them, and bought some of them, and kept them with his other cattle; and

it was there held that a court of justice will not assist a party, who has participated in a transaction forbidden by statute, to assert rights growing out of it, or to relieve himself from the consequences of his own illegal act. The principle is thus concisely stated in *Heland* v. *City of Lowell*, 3 Allen, 407: "And it is the established law, that when a plaintiff's own unlawful act concurs in causing the damage that he complains of, he cannot recover compensation for such damage."

In *Frye* v. *Chicago, Burlington and Quincy Railroad Co.* 73 Ill. 399, we said: "The rule is well settled that, if a party suffers injury whilst violating a public law, the other party being also a transgressor, he cannot recover for the injury, if his unlawful act was the cause of the injury. The party, bringing the cattle to the State, may have violated the law—appellants were no less transgressors, and the maxim, *in pari delicto potior est conditio defendentis*, must apply. In *Harris* v. *Hatfield*, 71 Ill. 298, similar views were expressed." (See also *Toledo, Wabash and Western Railway Co.* v. *Beggs*, 85 Ill. 80; *Toledo, Wabash and Western Railway Co.* v. *Brooks*, 81 id. 245; *Chicago and Alton Railroad Co.* v. *Michie*, 83 id. 427).

As long ago as the case of *Holman* v. *Johnson*, Cowp. 343, Lord Mansfield said: "The principle of public policy is this: *ex dolo malo, non oritur actio.* No court will lend its aid to a man, who founds his cause of action upon an immoral or illegal act."

In *Hall* v. *Corcoran*, 107 Mass. 253, it was said by the Supreme Court of Massachusetts: "The general principle is undoubted, that courts of justice will not assist a person, who has participated in a transaction forbidden by statute, to assert rights growing out of it, or to relieve himself from the consequences of his own illegal act. Whether the form of the action is in contract or in tort, the test in each case is, whether, when all the facts are disclosed, the action appears to be founded in a violation of law, in which the plaintiff has taken part." (*Way*

*v. Foster*, 1 Allen, 408; *Smith* v. *Boston and Maine Railroad Co.* 120 Mass. 490; *Wallace* v. *Cannon*, 38 Ga. 199; *Scott* v. *Duffy*, 2 Harr. (Pa.) 20; *Devor* v. *Knauer*, 84 Ill. App. 184; *Holt* v. *Green*, 73 Pa. St. 198; *DeGroot* v. *VanDuzer*, 20 Wend. 406; *Coppell* v. *Hall*, 7 Wall. 558).

The same doctrine is laid down in the text books. Beach, in his work on Contributory Negligence (3d ed. sec. 47), says: "When the plaintiff is obliged to lay the foundation of his action in his own violation of the law, he cannot recover. And when his illegal act also contributes to produce the injury of which he complains, he has no action, unless the defendant acted wantonly."

Cooley in his work on Torts (2d ed. marg. p. 151) says: "A further illustration of the rule, which refuses redress to one participating in a wrong, may be had where two persons are engaged in the same unlawful enterprise or action, and, in prosecuting it, one is injured by the negligence of the other." The reasoning of the latter author is, that, when the party injured undertakes to trace his injury to the negligence of the other, he shows that, at the time, he was himself engaged in unlawful action, and that it was only because of such action that the opportunity was afforded for the negligent injury. The author then says: "The injury, therefore, is as directly traceable to his own breach of the law as to the negligence of his associate; each has combined to produce it, and without both it could not have occurred. What the plaintiff must ask, therefore, must be this: that the law shall relieve him from the consequences of his disregard of the law; and this, as already stated, it will refuse to do."

So, in the case at bar, the defendant in error traces his injury to the negligence of the plaintiff in error, but, in doing so, he necessarily shows that, at the time, both he and the plaintiff in error were engaged in the unlawful enterprise of disturbing the peace and quiet of the family of Hirsch by loud and unusual noises, and by the firing of revolvers and a shot-gun. Because of the en-

gagement jointly and together of both plaintiff in error and defendant in error in the criminal charivari, an opportunity was afforded for the injury complained of. Therefore, the injury was as much due to the breach of the law by the defendant in error, as to the negligence of his associate, the plaintiff in error. Both the plaintiff in error and the defendant in error combined to produce the injury. It follows that defendant in error cannot be relieved by.the law from the consequences of his own disregard of the law.

The evidence shows, that there was an organization among these young men for the purpose of carrying into effect the unlawful charivari. Defendant in error testifies, that he was the first to reach the school house on the evening in question, and that his associates kept coming in, one or two at a time, until the whole party had arrived, including the plaintiff in error. A common purpose to participate in the unlawful transaction was thereby shown. Greenleaf, in his work on Evidence (vol. 1, sec. 111), says: "The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all.   *   *   *   It makes no difference at what time any one entered into the conspiracy. Every one, who does enter into a common purpose or design, is generally deemed, in law, a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others in furtherance of such common design."

In *Higgins* v. *Minaghan, supra*, the same doctrine was recognized that, where a party is present as an actual participant in a charivari and aids and encourages the others, he is responsible for the acts, language and conduct of each and every one, constituting the charivari party, the same as if such acts were done by himself.

It follows that the firing of the pistol by the plaintiff in error was as much the act of the defendant in error as of any other person engaged in the enterprise. The fact, that the parties, assembled at the school house, were associated in the joint prosecution of the common design, gave to the collective body the attribute of individuality by their mutual agreement, and the act of each member in furtherance of the common object was the act of all concerned. Under this view, to allow defendant in error to recover in this case would be to allow him to recover for an injury, which was, in the eye of the law, as much his own act as the act of the plaintiff in error.

It is said, however, by the defendant in error, that the trial court gave, in behalf of the plaintiff in error, the instructions which he asked embodying the view above stated. It is true that the court instructed the jury that whosoever willfully disturbs the peace and quiet of any neighborhood or family by loud or unusual noises, is, under the laws of this State, guilty of a misdemeanor, and subject to a fine on conviction thereof. The court also instructed the jury, in behalf of plaintiff in error, that, if they should believe from the evidence "that, at the time of the injury complained of, the plaintiff and defendant, with others, were engaged in an unlawful enterprise or action, and in prosecuting such unlawful enterprise the plaintiff was unintentionally injured by the negligence of the defendant, then the plaintiff cannot recover for any injury received under such circumstances, while so unlawfully engaged." But the court gave twenty-five instructions in behalf of defendant in error, which ignored entirely the unlawful character of the enterprise in which these parties were engaged, and which based the responsibility of the plaintiff in error for negligence in the handling of his pistol, resulting in the injury to defendant in error, upon the supposition that none of the parties, participating in the charivari, were engaged in an unlawful transaction. The court used the following lan-

guage in instruction, numbered 23, given for the defendant in error, to-wit: "The court instructs the jury that a charivari, so called, is not in itself unlawful." This instruction was not only incorrect as a statement of the law, but it was directly contradictory of the instructions heretofore referred to, given in behalf of the defendant. In instruction 19, given in behalf of the defendant in error, the court said: "The lawfulness of the act, from which the injury resulted, is no excuse for the negligence," etc. In the same instruction the court also said: "The court further instructs the jury that, although you may find the defendant was in the exercise of a lawful right, yet he is bound to use such reasonable diligence and precaution that no injury may be done to others." Clearly, these instructions, thus given for the defendant in error, were erroneous in holding that plaintiff in error was engaged in the exercise of a lawful right, while participating in the charivari.

The instructions above referred to, given for plaintiff in error, tended to make the impression upon the minds of the jury that the charivari was an unlawful transaction, while all the instructions of the defendant in error, including those herein referred to, tended to make the impression upon the minds of the jury that the charivari was not an unlawful transaction. "Where the instructions set up for the jury contradictory rules for their guidance, which are unexplained, and following either of which would or might lead to different results, then the instructions are inherently defective and calculated to confuse and mislead the jury." (Blashfield on Instructions to Juries, sec. 73; *Chicago, Burlington and Quincy Railroad Co.* v. *Payne*, 49 Ill. 499; *Quinn* v. *Donovan*, 85 id. 194).

In the first and second counts of the declaration an assault is charged against plaintiff in error. "The intention to do harm is of the essence of an assault." (2 Greenleaf on Evidence,—16th ed.—sec. 83; 1 Hilliard on Torts, —3d ed.—p. 181, secs. 7, 8, 9; *Paxton* v. *Boyer*, 67 Ill. 132;

*Razor* v. *Kinsey*, 55 Ill. App. 605; *Kennedy* v. *People*, 122 Ill. 649). In the case at bar, there is no evidence in the record, tending in the slightest degree to prove that plaintiff in error intended to do any harm to the defendant in error, or that the wound, inflicted upon the defendant in error, was in any way intentional or willful. The sole ground, upon which it is sought to base a right of recovery, is that the plaintiff in error was careless and negligent in the handling of the revolver, which caused the injury to the defendant in error. In view of this absence of intention or willfulness on the part of the plaintiff in error, he asked the court to instruct the jury to find for him upon the first and second counts of the declaration; but the instructions so asked were refused. We are of the opinion that the instructions to find for the defendant upon the first and second counts should have been given, and that it was error to refuse them.

The judgments of the Appellate Court and of the circuit court of Piatt county are reversed and, the cause is remanded to the latter court with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded.*