FRANK CRANE, Admr., Appellant, *vs.* THE CHICAGO AND WESTERN INDIANA RAILROAD COMPANY, Appellee.

*Opinion filed February 20, 1908—Rehearing denied April 9, 1908.*

1. NEGLIGENCE—*the wrongful act, and not the death, is cause of action in case of wrongful killing.* At common law no right of action existed where death resulted from wrongful act or neglect, and the purpose of our Injuries act is to give a right of action for the wrongful act or negligence notwithstanding death has resulted and not because of that fact.

2. SAME—*proviso added in 1903 to section 2 of the Injuries act construed.* The proviso to section 2 of the Injuries act, added in 1903, which specifies that no action shall be prosecuted in Illinois for a death occurring outside the State, refers to a case where both the wrongful act, neglect or default and the death occurred outside the State, and not to a case where such wrongful act, neglect or default occurred in Illinois but the death resulting therefrom occurred in another State.

CARTER and DUNN, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding.

KRUSE & PEDEN, for appellant.

G. W. KRETZINGER, and L. L. SMITH, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was an action on the case commenced in the superior court of Cook county by the appellant to recover damages for the death of his intestate, William Frank, against appellee, as the owner and lessor of the Chicago and Western Indiana railroad, which railroad runs through the village of Burnham, in Cook county, and in which village William Frank resided with his father, Frederick Frank.

It appears from the evidence that on the evening of January 3, 1904, Frederick Frank and his sons, Robert and William, who were of the respective ages of ten and twelve years, were riding in a milk wagon drawn by one horse,

upon Center street, in said village, and as the father drove upon appellee's railroad track, which intersects said Center street, the vehicle in which they were riding was run over by a passenger train of the Chicago, Indianapolis and Louisville Railway Company, the lessee of said railroad, which passenger train was running at a high rate of speed. Robert Frank was not seriously injured. Frederick Frank died on the following morning from injuries received by him at the time of the collision, and William Frank was removed a few miles from the place of accident to a hospital situated in the city of Hammond, in the State of Indiana, where he died on January 23, 1904, from the effect of injuries received by him at the time of the accident.

The declaration contained six counts, each of which averred William Frank was injured through the negligence of appellee's lessee railroad company within the limits of the State of Illinois, from the effect of which injury he died, but neither of said counts averred he died outside the limits of the State of Illinois. The general issue was filed, and at the close of all the evidence the appellee moved the court to instruct the jury to find the defendant not guilty. The grounds upon which the defendant asked the instruction directing a verdict in its favor were, that under the amendment of 1903 to the act entitled "An act requiring compensation for causing death by wrongful act, neglect or default" there could be no recovery, because it appeared from the evidence the death of plaintiff's intestate occurred outside of the State of Illinois. The court construed the said amendment to prohibit a recovery in this State because the death occurred in another State, and gave the instruction. The jury accordingly returned a verdict for defendant, upon which the court rendered judgment, and the plaintiff has prosecuted an appeal direct to this court, and has urged as grounds of reversal the following reasons: First, that the question whether the appellant could maintain an action in this State for the death of his intestate should have been

raised by a plea in abatement; second, that section 2 of the act above referred to should be so construed as to permit a recovery in the courts of this State where the injury or wrongful act from which death resulted occurred in this State, although the party injured died, from the effect of such injury, outside the limits of this State; and third, that unless said section of the statute is so construed, that section of the statute is in conflict with the constitution of this State and the constitution of the United Sates in this: that it is class legislation. From the view we take of this case it will only be necessary to consider the second contention of appellant.

Our statute entitled "An act requiring compensation for causing death by wrongful act, neglect or default," was adopted in 1853. Section 1 of the act reads as follows: "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured." Section 2 directs in whose name and for whose benefit the action shall be brought, and fixes a limit of time in which the suit shall be commenced and the maximum amount that can be recovered. By an amendment the legislature, in 1903, added a proviso to said section 2, part of which reads as follows: *"Provided further,* that no action shall be brought or prosecuted in this State to recover damages for a death occurring outside of this State," and it is the construction of this language in the amendment of 1903 that is here involved.

If the death were held to be the cause of action, then the amendment would have to be construed as intended to prohibit the bringing of a suit in this State if the death oc-

curred in another State, although the unlawful act which caused the injury that resulted in the death may have occurred in this State. But the death is not made the cause of action by our statute. At the common law no action could be maintained against any person or corporation causing the death of another by wrongful act, neglect or default. Our statute authorizing the maintenance of such an action was adopted in 1853, and the first section of it has never been altered or amended. By that section it is not the death, but the wrongful act, neglect or default which causes the death, that constitutes the cause of action. This was so held in *Holton* v. *Daly*, 106 Ill. 131, where it was said (p. 137): "The cause of action is plainly the wrongful act, neglect or default causing death, and not merely the death itself. Damages are recoverable, not for the killing, but, as was observed by Comstock, J., in *Dibble* v. *New York and Erie Railroad Co.*, as quoted by him in his dissent in *Whitford* v. *Panama Railroad Co.* 23 N. Y. 486, 'notwithstanding or in spite of the death which ensues. The statute recognizes but one cause of suit, and that is the wrong done, irrespective of its consequences.'" An injury resulting from the wrongful act, neglect or default of another gives the injured party, if he survives, a right of action, and if he dies, this right of action survives to his personal representatives under the statute. In either case the cause of action is the same. But in whose name and for whose benefit the action shall be brought depends upon whether the injury resulted in death, as may also the amount of recovery.

We are of opinion the proviso to section 2, from which we have quoted, was intended to be considered in connection with section 1 of the act of which it forms a part, and when so considered it must be construed to mean that no action shall be brought in this State to recover damages for a death where the wrongful act, neglect or default causing the death occurred outside of this State. To construe said proviso to mean that notwithstanding the wrongful act that caused the

death occurred in this State, if the injured party was removed to another State before death resulted and there died from such injuries no action could be maintained in this State, would appear so absurd and contrary to the ends of justice that such construction should not be placed upon the language used unless it is so plain and unambiguous that it will admit of no other rational construction. In *People* v. *City of Chicago*, 152 Ill. 546, the rules by which courts should be governed in interpreting statutes were discussed and numerous authorities cited on the subject. It was there said (p. 552): "When the literal enforcement of a statute would result in great inconvenience and cause great injustice and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and adopt a construction which will promote the ends of justice and avoid the absurdity."

In this case the appellant's intestate was injured by the wrongful act of the appellee's lessee in this State, for whose wrongful act the appellee is responsible. William Frank was taken to a hospital just across the State line and died in the State of Indiana. Had he returned to this State and there died, it must be conceded his personal representatives could maintain this action. While the action could only be maintained in case of the death of William Frank, the wrongful act of the appellee's lessee, and not the death resulting from such act, is the foundation of the action. We think it obvious that the object of the legislature in passing the provision of section 2 above referred to, was to prevent the bringing of actions in the courts of this State to recover damages for personal injuries resulting in death where the wrongful act causing it occurred outside of the limits of this State, and not to prevent the bringing of actions to recover damages for personal injuries where the wrongful act, neglect or default took place in this State although the death occurred outside of the State.

We are therefore of the opinion the superior court erred in directing a verdict in favor of appellee, and the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE DUNN, dissenting:

I concur in the reversal of the judgment but not in the opinion of the court. In my judgment the proviso in the act of 1903, so far as it prohibits the bringing of an action for a death occurring outside of this State, is unconstitutional. In classifying cases in which damages may or may not be recovered for wrongful or negligent acts causing death, the basis of the division should have some reference to the character of the act, the relation between the deceased and the party causing his death, the relation between the deceased and those to whom compensation is to be made, or some other circumstance affecting the justice or reasonableness of requiring compensation. The place where death occurs is a mere incident. It has no reasonable connection with the question of the justice of requiring compensation. "The length of time a physician has practiced and the skill acquired by experience may furnish a basis for classification, (*Williams* v. *People,* 121 Ill. 84,) but the place where such physician has resided and practiced his profession cannot furnish such basis and is an arbitrary discrimination, making an enactment based upon it void.—*State* v. *Pennoyer,* 65 N. H. 113." (*In re Day,* 181 Ill. 73.) "Every citizen has an equal right with every other to resort to the courts of justice for the settlement and enforcement of his rights, and it is true that a discrimination between different classes of litigants, which is merely arbitrary in its nature, is a denial of that right and of the equal protection of the law." *Sanitary District* v. *Bernstein,* 175 Ill. 215.

At common law no right of action existed for the recovery of damages resulting from the death of a person caused by another's negligent or wrongful act. The act of

1853 gave such right of action, and its subject matter was only wrongful acts, neglects or defaults occurring within this State and causing death. It could not have included matters occurring outside the State, because the legislature has no authority over the conduct of individuals outside the State and its acts have no extra-territorial effect. It is the wrongful act, neglect or default which constitutes the cause of action, and to constitute a cause of action under section 1 of the statute it must have occurred in this State. The proviso in section 2 must be read in connection with section 1, and its object is to limit the cases in which a cause of action is given by that section. In terms, section 1 gives the action for damages "whenever the death of a person shall be caused by wrongful act, neglect or default" occurring within this State. The proviso, however, limits the universality of section 1 by confining the cause of action given, to cases where the death itself also occurs within this State.

If the proviso, in accordance with the general rule of construction, is to be confined to the subject matter of the enactment, then it applies only to the acts or omissions mentioned in section 1, occurring within this State and causing death. If it is to be regarded as an independent enactment, then it applies only to deaths occurring outside the State, and prohibits the courts of the State from taking cognizance of an action for any such death, whether the wrongful or negligent act occurred within this State or out of it. In either case it is the place of death, and not of injury, which determines the existence or non-existence of a right of action. The words are plain and unambiguous. If the legislature intended to deny the right to bring an action for any death occurring outside the State, more apt words for that purpose could not have been chosen. The intent is obvious. It was to make the test of the right of action whether death occurred within or without the State. The court ought not to impute a different intent which the words used do not express.

"Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what. they have plainly expressed, and consequently no room. is left for construction. Possible, or even probable, meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere." Cooley's Const. Lim. 55, and cases cited in note.

"It is not allowable to interpret what has no need of interpretation, and, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. * * * The question in this and other cases of construction of written instruments is not what was the intention of the parties, but what is the meaning of the words they have used." *City of Beardstown* v. *City of Virginia,* 76 Ill. 34.

It is a well recognized rule of construction of a statute that "where the object of the legislature is plain and the words of the act unequivocal, courts ought to adopt such a construction as will best effectuate the intention of the legislature, but they must not, even in order to give effect to what they may suppose to be the intention of the legislature, put upon the provision of a statute a construction not supported by the words, even though the consequences should be to defeat the object of the act. (Dwarris on Statutes, 702; Smith's Com. 830, sec. 714.) The fittest course in all cases where the intention of the legislature is brought in question is to adhere to the words of the statute, construing them according to their nature and import, in the order in which they stand in the act, rather than to enter upon an inquiry as to the supposed intention.—Smith's Com. 830,

sec. 715." *Frye* v. *Chicago, Burlington and Quincy Railroad Co.* 73 Ill. 399.

"The primary and general rule of statutory construction is, that the intent of the law-maker is to be found in the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation and simply seek to ascertain the will of the legislator. It is true, there are cases in which the letter of the statute is not deemed controlling; but the cases are few and exceptional, and only arise when there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission,—no mere failure to provide for contingencies which it may seem wise to have specifically provided for,—justify any judicial addition to the language of the statute." *United States* v. *Goldenberg,* 168 U. S. 95.

In this case the legislature has specifically provided that no action shall be brought for a death occurring outside the State, and is presumed to know the meaning of the words. The language is unambiguous. "The province of construction lies wholly within the domain of ambiguity." The court ought not to add words which shall make the place of injury, instead of death, the test of the right to maintain the suit. The right of action in such cases existed under the statute before the amendment of 1903. That part of the amendment prohibiting the bringing of suits in cases where the death occurred outside the State, being in violation of the constitution, did not affect the right to sue, theretofore existing.

Mr. JUSTICE CARTER: I concur in the views expressed in the dissenting opinion of Mr. Justice DUNN.