## J. R. Kessinger (Wood River Sand Company), Appellee, v. Standard Oil Company, Indiana, Appellant.*

1. NAVIGABLE WATERS—*right to take sand from.* No one has a right to take sand from a navigable stream without first having obtained the consent of the Secretary of War.

2. ACTIONS AND SUITS—*illegal act as basis of.* Public policy demands that no court lend its aid to one who founds his cause of action upon an immoral or illegal act.

3. NAVIGABLE WATERS—*illegal acts by both parties to action.* The defendant to an action for ruining plaintiff's business of taking sand from a navigable river is not prevented from taking advantage of the fact that the taking by plaintiff was illegal by the fact that defendant violated the same law by throwing silt and sand into the river.

4. ESTOPPEL—*purchase of commodity illegally obtained.* Defendant to an action for ruining plaintiff's business of taking sand from a navigable river without consent of the Secretary of War is not estopped from asserting such illegality by his purchase of sand from the plaintiff.

5. NAVIGABLE WATERS—*rights of public and of riparian owners.* Riparian proprietors on a navigable stream own the land to the center thereof and the only right of the public therein is an easement for navigation purposes.

6. NAVIGABLE WATERS—*right of riparian to enjoin trespass on bed of.* As against one other than the Federal government a bill by riparian owner will lie to enjoin the making of excavations and removal of sand from the bed of a navigable stream adjoining his premises.

* Received from clerk of Appellate Court, August 8, 1927.

7. NAVIGABLE WATERS—*right of riparian owner to take sand from.* A riparian owner has no property right to take sand from the bed of a navigable stream adjoining his premises which, in the absence of permission from the Secretary of War, will allow him to recover damages from one who interferes with his taking the sand.

Appeal by defendant from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1925. Reversed. Opinion filed August 5, 1925.

THOS. WILLIAMSON, for appellant.

C. W. BURTON, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellee occupied a tract of land on the banks of the Mississippi River, as tenant from month to month under a lease from the Roxana Oil Company, and was engaged in excavating and removing sand from the Mississippi River. The sand was brought in in barges, and was unloaded by means of a clamshell bucket operated by a derrick and hoist, and dumped into a chute, from which it was loaded into wagons and delivered for commercial purposes. For some three years prior to the filing of this suit herein, appellee had been conducting an apparently profitable business, numbering among his customers appellant oil company.

Appellant owns land on both sides of Wood River, a stream emptying into the Mississippi River about three-fourths of a mile above appellee's plant. In the summer of 1922, appellant dredged and cleaned out the channel of this stream, and it is claimed by appellee that in so doing large quantities of sand, mud, silt and rock were discharged into the Mississippi River, and flowed downstream, filling up the river above appellee's plant so as to shut off access thereto, rendering the same useless, and that, by reason thereof, he was, on August 27, 1922, forced to close his plant and thereby suffered heavy damages by reason of the loss

of profits from said business. Appellee filed suit in the circuit court of Madison county against appellant to recover for the damages so claimed to have been sustained by him.

The declaration consisted of one count which averred, among other things, the renting of said premises, the construction of said plant, the size and profitable character of the business built up and carried on by appellee, and the destruction of said business as above set forth, alleging damages, etc.

To said declaration, appellant filed a plea of the general issue and five special pleas. The first special plea denied lawful possession of said harbor on the part of appellee; the second denied that appellee possessed or had any riparian rights in the Mississippi River; the third denied that appellee owned, possessed or controlled any riparian rights in the Mississippi River; the fourth denied appellee's right to remove sand or gravel from said river; while the fifth averred that appellee did not have permission from the Secretary of War, or any other legal authority, to make such removal.

A demurrer was sustained to the fourth and fifth pleas, and the cause went to trial upon the issues made by the first, second and third pleas. A verdict was rendered in favor of appellee for the sum of $6,000, and judgment having been rendered thereon, appellant prosecutes this appeal to reverse the same.

The only evidence offered by appellee on the question of his alleged damages was based on his charge that his business of taking sand from the Mississippi River for commercial purposes had been practically destroyed by the action of the appellant as above set forth. For the purposes of this opinion, it will be assumed that the evidence supports the contention of appellee as to the alleged destruction of his business. Therefore, the principal question arising on this record

is as to whether a recovery can be had upon an action so grounded.

It is first contended by appellant that appellee had no riparian rights by virtue of his lease; that the owner of the fee alone has such rights. In the view we hold of this case on the merits, it will not be necessary for us to pass on this question.

The record discloses that appellee did not limit the taking of sand to that part of the river adjoining the land covered by his lease, but took the same from various points in the river, both on the Illinois and the Missouri side. The Mississippi River being a navigable stream, appellee had no right to excavate or take sand therefrom, without first having obtained the consent of the Secretary of War so to do. 30 U. S. Statutes at Large, page 1151, provides, among other things:

"It shall not be lawful to excavate or fill, or in any manner to alter, or modify, the course, location, condition, or capacity of any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or enclosure within the limits of any backwater, or of the channel of any navigable river of the United States unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of War prior to beginning the same."

Appellee practically concedes that if the question were being raised by the Federal government that this would be true, but insists that appellant is in no position to raise the question; that it can only be raised by the government. The Federal statutes provide a penalty for the violation of the foregoing provision. 30 U. S. Statutes at Large, page 1153. Appellee was clearly violating the law in excavating and taking sand from said river, as it is conceded in the record that he did not have the consent of the Secretary of War so to do.

It is a well-established principle of public policy that no court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. *Harris v. Hatfield*, 71 Ill. 298; *Fry v. Chicago, B. & Q. R. Co.*, 73 Ill. 399; *Gilmore v. Fuller*, 198 Ill. 130–139; *Haumesser v. Central Brewing Co.*, 158 Ill. App. 648–651; *Fristoe v. Boedeker*, 194 Ill. App. 52; *Fogelsong v. Peoria Ry. Terminal Co.*, 203 Ill. App. 546–553; *Hall v. Corcoran*, 107 Mass. 253. See also *Chicago W. D. R. Co. v. Lambert*, 119 Ill. 255.

In *Hall v. Corcoran, supra,* the Supreme Court of Massachusetts, in discussing this question, says:

"The general principle is undoubted, that courts of justice will not assist a person who has participated in a transaction forbidden by statute to assert rights growing out of it, or to relieve himself from the consequences of his own illegal act. Whether the form of the action is in contract or in tort, the test in each case is, whether, when all the facts are disclosed, the action appears to be founded in a violation of law, in which the plaintiff has taken part." Citing *Way v. Foster*, 1 Allen (Mass.) 408; *Smith v. Boston & M. R.*, 120 Mass. 490; *Wallace v. Cannon*, 39 Ga. 199; *Scott v. Duffy*, 2 Harr. (Pa.) 20; *Devor v. Knauer*, 84 Ill. App. 184; *Holt v. Green*, 73 Pa. St. 198; *Degroot v. VanDuzer*, 20 Wend. (N. Y.) 406; *Coppell v. Hall*, 7 Wall. (U. S.) 558.

The same doctrine is laid down in Beach on Contributory Negligence (3d. Ed.) sec. 47, where the author says: "When the plaintiff is obliged to lay the foundation of his action in his own violation of the law, he cannot recover. And when his illegal act also contributes to produce the injury of which he complains, he has no action, unless the defendant acted wantonly."

It is contended by appellee that appellant is not in a position to take advantage of the fact that appellee may have violated the law in taking sand from said

river without having obtained the required consent, for the reason that appellant also violated the same law by throwing silt, sand, etc., into said river. There is no merit in this contention, as appellant is not suing. If appellant were bringing suit, such defense would be good, but in this case it does not avail appellee when, as plaintiff, he is founding his action upon a violation of the law. *Gilmore v. Fuller, supra.*

It is further contended by counsel for appellee that appellant is not in a position to make the defense that appellee did not have an enforceable right to take sand from said river for commercial purposes, for the reason that appellant was a customer of appellee, and had contracted with him from time to time for large quantities of such sand—in other words, that the making of such purchases by appellant would work an estoppel. No authority was cited by appellee sustaining this contention, and it would follow from the reasoning of the authorities above cited that no such estoppel could arise in a case where the alleged cause of action was grounded upon the doing of an illegal act.

It is the law of this State that riparian proprietors on a navigable stream own the lands to the center thereof, and the only right the public has therein is an easement for the purpose of navigation. *Washington Ice Co. v. Shortall,* 101 Ill. 46–52. See also *Middleton v. Pritchard,* 3 Scam. (Ill.) 510; *City of Chicago v. Laflin,* 49 Ill. 172; *City of Chicago v. McGinn,* 51 Ill. 266; *Braxon v. Bressler,* 64 Ill. 488; *Houck v. Yates,* 82 Ill. 179; *Revell v. People,* 177 Ill. 468–488; *Cobb v. Commissioners of Lincoln Park,* 202 Ill. 427; *Albany R. Bridge Co. v. People ex rel. Matthews,* 197 Ill. 199–204; *Archer v. Greenville Sand & Gravel Co.,* 233 U. S. 60, 58 L. Ed. 850.

The law further is that while a riparian owner may not have a right as against the Federal government to make excavations and remove sand from the bed of the stream adjoining his premises, yet as against a

third party, a bill will lie in his favor against such third party, enjoining the making of such excavations. *Archer v. Greenville Sand & Gravel Co., supra.* In discussing this question the court at page 69 says:

"Plaintiff owning the land to the middle of the stream, it would seem to follow that she must have such property in its soil as to resist a trespasser upon it, such as the bill alleges the Gravel Company to be. The right, however, is denied, and it is said that she is powerless to prevent the Gravel Company from dredging in front of her land because, under the laws of the United States, she herself could not do so without permission from the Secretary of War. (Citing statute requiring such permission from the Secretary of War.) Whether if she took gravel from the front of her land she would incur the condemnation of this act it is not necessary to decide. She certainly had such an interest in the conditions to prevent one without right from disturbing them. We cannot help observing that the Gravel Company by its conduct has given an interpretation of the act against its contention, unless, indeed, it wishes to confess itself a violator of public law in order to escape responsibility for a private injury.

"The Gravel Company tries to avoid this situation, saying that a violation of the law cannot be imputed to it because it cannot be assumed that the 'extensive and continued dredging, as alleged in the bill, affecting necessarily the channel of the river, would be undertaken without proper authorization and authority, or that the proper officers of the government would have allowed these operations to continue.' The supposition is easily answered. There is no scheme of improvement of navigation suggested by the bill, and it cannot be supposed that the Secretary of War would authorize the Gravel Company to take material from the river for commercial purpose, and the bill alleges such to be the purpose. Besides, if the Gravel Com-

pany had authority from the Secretary of War, it is a matter of defense to be pleaded.''

This language certainly seems very apt and appropriate in connection with the case at bar. In *Braxon v. Bressler, supra,* suit was instituted by appellant against appellees to recover for stone taken from the bed of the river adjoining appellee's premises. The court held that Rock River was a navigable stream; that appellee as riparian owner had the title to the center of the stream, and was entitled to recover in an action of trespass against appellant for the stone taken therefrom.

In view of the holdings of the above-mentioned authorities, it follows as a matter of law that appellee cannot recover substantial damages against appellant, when as a part of his case he makes proof that he was taking sand from the bed of the Mississippi River without the consent of the Secretary of War, thereby violating a Federal statute. Appellee had no property right in the taking of sand from the Mississippi River, and it therefore follows that the trial court erred in sustaining the demurrer to appellant's fourth and fifth special pleas.

Other errors were assigned on the record, but in our view of the case as herein expressed, it will not be necessary to discuss the same. Appellee having failed to establish a right to substantial damages, the judgment must be reversed.

*Reversed.*