DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1911.

---

## Andrew J. Fortner, Administrator, Appellee, v. The Wabash Railroad Company, Appellant.

1. INJURIES ACT—*section 2 construed.* Where the wrongful act, neglect or default took place in this state, an action to recover damages for the death occasioned thereby is properly brought in this state notwithstanding that death occurred outside of this state. Crane v. C. & W. I. R. R. Co., 233 Ill. 259, followed.

2. NEGLIGENCE—*when owner of bridge guilty of.* Held, under the evidence, that the question as to whether the death of the plaintiff's intestate resulted from the negligence of the owner of a bridge in suddenly and without warning opening the draw thereof, etc., was properly submitted to the jury.

3. ORDINARY CARE—*reliance upon custom.* A person crossing a bridge, of which a draw is appurtenant, who knows the manner in which such draw is customarily operated, has a right to rely upon the observance of such custom.

4. INSTRUCTIONS—*when upon maintenance of safety expedients, not erroneous.* Held, that the instruction in question in this case which had reference to the care to be exercised by the owner of a bridge to protect persons passing over the same, did not in effect tell the jury that such owner was obligated to adopt and maintain each and every of the expedients referred to, and that the same was not erroneous.

PHILBRICK, J., dissenting.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed May 26, 1911. *Certiorari* denied by Supreme Court (making opinion final).

ANDERSON & MATTHEWS, for appellant.

W. E. WILLIAMS and A. CLAY WILLIAMS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Pike county against appellant upon a verdict for $3,500, awarded by a jury as damages for wrongfully causing the death of appellee's intestate.

Appellant controls and operates a combined railroad, vehicle and foot bridge, 1524 feet in length, across the Mississippi river between East Hannibal, Illinois, and Hannibal, Missouri. The bridge consists of seven steel spans resting upon stone piers. Beginning on the Illinois side of the river going west there are five permanent spans 920 feet in length; then a draw span 358 feet in length the center of which rests upon a stone pier and opens and closes to permit the passage of boats in the main channel on either side of said pier, and then a permanent span 246 feet in length to the Missouri shore. Foot passengers were charged a toll of five cents by appellant for crossing said bridge and the railroad fare between the stations of Hannibal and East Hannibal was forty cents. On the night of November 9, 1907, the deceased accompanied by appellee, his father-in-law, Joseph McEwen, his brother-in-law, and Bud Wasson and John Winfield, boarded appellant's train at Fall Creek and together with seven other passengers on the same train alighted at East Hannibal for the purpose of walking across the bridge to Hannibal and thus saving the additional cost of carriage by rail. These parties all paid the required bridge toll to appellant's agent at East Hannibal and immediately proceeded to walk across the bridge. The night was very dark and cold and a strong wind was blowing from the northwest. Shortly after they started, and before they reached the east end of the draw span, the deceased and his companions, manifestly in the first instance for the purpose of hastening their journey across the bridge and avoiding the cold, commenced to run or "trot," the deceased being slightly in advance of the others. They thus crossed the permanent spans and continued across the draw span to its west end, when the same was suddenly opened and the deceased fell therefrom into the river and was drowned. The declaration alleges that appel-

lant was negligent in failing to maintain reasonable lights on said bridge; in failing to maintain and operate necessary and proper guard rails or other barriers on said bridge; in failing to give warning or notice to foot passengers on said bridge of its intention to open the draw; and in failing to give passengers admitted to the draw a reasonable opportunity to pass off in safety before opening the same.

It is first urged that the trial court erred in refusing to give the peremptory instruction tendered by appellant, because the cause of action, if any, arose in Missouri; because no negligence by appellant as alleged was shown and because it conclusively appears from the evidence that the deceased was/drowned by reason of his own negligence. Counsel for appellant construe section 2 of the Act relating to Injuries, as amended in 1903, to require that the death of appellee's intestate must be shown to have occurred in this state. In Crane v. C. & W. I. R. R. Co., 233 Ill. 259, it was held in substance, that where the alleged wrongful act, neglect or default took place in this state, an action to recover damages for a death occasioned thereby is properly brought in this state, notwithstanding the death occurred outside of this state. It is conceded that the permanent spans of the bridge east of the draw span were within the territorial limits of Illinois as was also that portion of the draw span located above a line east of the center thread of the channel. The negligence alleged relates to a failure on the part of appellant to perform certain duties owing by it to foot passengers before the east end of the draw span was reached or while such passengers were upon the draw span. The draw span was a movable structure, which was in part within the territorial limits of Missouri, and in part within the territorial limits of Illinois. In so far as the negligence alleged is referable to that portion of the draw span west of the pivot pier, we have no doubt but that the courts of this state have at least concurrent jurisdiction with the courts of Missouri. See Enabling Act of Congress, April 18, 1818. Hurd's Stat. p. 25; sec. 2, chap. 34, Rev. Stat.

It is uncontroverted that appellant had actual knowledge

that passengers upon its trains frequently alighted at East Hannibal and walked across its bridge immediately after the train left that station, and that the deceased and twelve other persons had paid the required bridge toll to walk across upon the occasion in question. A steamboat coming down the river had sounded its whistle as a preliminary signal to the engineer upon the bridge that the draw would be required to be opened, at or about the time the train stopped at the station, which signal was either not heard or was not understood by any of the party. No guard rail was placed at the west end of the permanent span to prevent persons from going upon the draw span, nor was there any signal light displayed nor any warning given, as notice to persons crossing the bridge, that the draw was about to open. No guard rail was placed at the west end of the draw span. After the deceased and all except two of the persons accompanying him had entered upon the draw span the steamboat sounded its whistle as a signal for the draw to be opened and the engineer upon the bridge sounded a whistle in response. Following the sounding of the last whistle Wade, a servant of appellant stationed upon the Missouri side, placed a guard rail on the east end of the permanent span on that side and started to cross the draw span for the purpose of placing a guard rail at the west end of the permanent span upon the Illinois side but before he was able to reach the east end of the draw span the draw was opened.

Wade testified that before he crossed the draw span for the purpose of placing a guard rail on the west end of the permanent span on the Illinois side, he placed a red lantern between the rails of the track at the east end of the permanent span on the Missouri side and a white lantern in a direct line in the same position on the west end of the draw span, and in this respect he is corroborated by appellant's engineer and by one Pulliam. All of the persons who were then crossing the bridge deny that the said lights were so placed by Wade.

It is not claimed by appellant that the red and white lights placed between the rails of the track were so placed as a warning signal to pedestrians upon the bridge that the draw was

Fortner v. Wabash R. Co., 162 Ill. App. 1.

about to open or was open, but it appears from the evidence
that they were so placed to serve as a guide line for the en-
gineer in closing the draw after the same had been opened.
Wade further testified that when he was running to the east
end of the draw span he met several persons about the center
of the span going "pretty fast" in the opposite direction and
said to them, "I don't believe you can make it off," but the
persons then on the draw denied that he made any such
statement.    In this state of the record the question whether
or not the appellant was guilty of negligence as alleged in
the declaration was properly submitted to the jury.

As bearing upon the question of due care by the deceased
for his own safety counsel for appellee obscure the issue by
their reliance upon what they characterize as gross and wilful
negligence of the appellant to excuse any want of due care
upon the part of the deceased.    Neither under the pleadings
nor under the proof is the appellant chargeable with such wil-
ful and wanton misconduct as to excuse appellee from alleg-
ing and proving that his intestate was in the exercise of due
care for his own safety.

The evidence discloses that when the draw was about to
be opened it was customary for the watchman stationed upon
the Missouri side of the draw to signal to the agent at East
Hannibal for a clearance, and upon receiving the signal that
all was clear to proceed to place the red lights and guard
rails on the ends of the permanent span adjoining the ends
of the draw span and to place white lights on the ends of
the draw span, and that such clearance signals were ex-
changed upon the occasion in question.

While the evidence discloses that the deceased had fre-
quently crossed the bridge prior to the time of his death it
does not appear that he had ever crossed the bridge at night,
or that he was familiar with the signals upon which the draw
was operated.    But if it be conceded that the deceased had
crossed the bridge in the night and was familiar with the
manner in which the draw was customarily operated he would
have a right to rely upon the observance of such custom.

The evidence tends to show that after the engineer sound-

ed the whistle in response to a signal from a boat for the opening of the draw two or three minutes customarily elapsed before the machinery which operated the draw was put in motion. That such customary time did not elapse upon the occasion in question is evident from the fact that the draw was opened before appellant's watchman was able to reach the west end of the permanent span on the Illinois side in order to perform his usual duties there. We cannot escape the conclusion that if the draw had not been permaturely opened the deceased would have been able to reach the permanent span on the Missouri side in safety.

As tending to show that the deceased was not in the exercise of due care for his own safety upon the occasion in question appellant places great reliance on the testimony of A. J. Fortner, the father-in-law of the deceased, to the effect, as abstracted, that while the parties were running across the draw span some one said, "We have plenty of time," and he (Fortner) "thought the draw was going to open in a few minutes," and further, that the deceased "ran all the time after he started to run and did not stop or look or listen at any time on the draw." The witness did not say that the deceased used the language testified to, but if the witness had so testified it would only have tended to show knowledge on the part of the deceased of the time which customarily elapsed after the signal was given by the engineer on the bridge before the draw opened, and a reliance by the deceased on the observance of such custom. Fortner, who was familiar with the movements of the draw, then supposed it would not open for a few minutes, which time would have been amply sufficient to enable all parties to reach the permanent span. The statement ascribed to the witness that the deceased did not look and listen as he ran was a mere conclusion on the part of the witness announced by his answer in the negative to a question propounded in the language of his answer as abstracted. The witness was unable to see the deceased because of the darkness and manifestly could not testify of his own knowledge to what the deceased did or did not do in that regard. A review in detail of the testimony of all of the wit-

nesses called on behalf of appellee, tending to show that the deceased was in the exercise of due care for his own safety would unduly extend this opinion. We have considered the same carefully and are compelled to the conclusion that the trial court did not err in submitting that question to the jury. Witnesses called on behalf of appellant testified by way of impeachment to certain contradictory statements made by appellee's witnesses, but the credibility of the several witnesses was a question for the jury to determine and we are unable to say that the conclusion arrived at by them and sanctioned by the trial court was wrong.

It is next urged that the second and third instructions given at the instance of appellee were erroneous and prejudicial because they imposed upon appellant the duty to have and maintain each and all of the methods prescribed to prevent injuries and death. These instructions in that respect informed the jury that if they found from a preponderance of the evidence that the maintenance of reasonable lights on said bridge and the maintenance of reasonable guard rails or other barriers and the giving of notice or warning to foot passengers on said bridge and a reasonable time and opportunity to pass over in safety were the most reasonable, obvious and appropriate expedients and provisions for preventing injuries and death, and that in the ordinary use of said bridge and the operation of said draw, injuries and death were likely to happen to foot passengers, then it was the duty of appellant so using and operating said bridge to maintain such lights, etc. While the instructions are not to be commended, the objection urged overlooks the requirement in the instructions that it was incumbent upon appellee to show that appellant had failed to have and maintain each and all of the methods mentioned as reasonable expedients for the prevention of injuries and death before the jury could find for appellee. In this respect the instructions were unfavorable to appellee. But conceding that the instructions were erroneous for the reason urged they could not have operated to the prejudice of appellant, because it appears from a clear preponderance of the evidence that appellant upon the occasion in question

failed to have and maintain any one of the methods indicated to prevent injuries and death. The instructions did not assume to direct a verdict and were not required to contain all the elements necessary to a recovery by appellee.

For reasons heretofore stated the twenty-second instruction offered by appellant was properly refused.

The verdict of the jury and the judgment of the court are not clearly unwarranted and such judgment will be affirmed.

*Affirmed.*

MR. JUSTICE PHILBRICK, dissenting.